**Arnold Roderrick LIZARDO, Li Feng Chiu, Yuya Hasegawa, Kyoko Hiraoka, Taiko Tatenami, Yoshika Kusada, Sean Dugan, Marchelle Woelfel, Antwaune Ponds, Mutinta Mazoka, Plaintiffs–Appellants,**

v.

**DENNY'S, INC., Denny's Holdings, Inc., NDI Foods, Inc., Kenneth E. Adams, Douglas L. Paninski, Defendants–Appellees.**

**Docket Nos. 00–9015, 00–9063**

United States Court of Appeals, Second Circuit.

Argued: March 14, 2001

Decided: Oct. 5, 2001

John Roberti, New York City, (John J.P. Howley, Kaye, Scholer, Fierman, Hays & Handler, LLP, Kenneth Kimerling, Asian American Legal Defense and Education Fund on the briefs), for Plaintiffs–Appellants.

Elizabeth A. Wolford, Rochester, New York, (Michael R. Wolford, Wolford & Leclair LLP, of counsel), for Defendants–Appellees Denny's, Inc. and Denny's Holdings.

Edward Melvin II, Syracuse, N.Y. (Costello Cooney & Fearon on the brief), for Defendant–Appellee NDI Foods, Inc.

Before: CARDAMONE, LEVAL, Circuit Judges, and AMON, District Judge.[*]

AMON, District Judge:

Plaintiffs appeal from a final judgment of the United States District Court for the Northern District of New York (Scullin, *J.*) granting defendants' motions for summary judgment on plaintiffs' claims brought pursuant to 42 U.S.C. § 1981 and 42 U.S.C. §§ 2000a and 2000a–2. Plaintiffs, seven Asian Americans and three African Americans, claim that they were victims of race discrimination and retaliation when employees of Denny's restaurant failed to serve them and then ejected them when they complained.

In a comprehensive opinion, the district court concluded that plaintiffs failed to offer evidence from which a reasonable juror could find that defendants engaged in race discrimination or retaliation. Because we concur in that ultimate assessment, we affirm.

## I. BACKGROUND

The events occasioning this lawsuit occurred in the early morning hours of April 11, 1997 at a Denny's restaurant located on Erie Boulevard in Syracuse, New York. The defendant NDI Foods, Inc. (NDI) owned and operated the restaurant pursuant to the terms of a Franchise Agreement with defendant Denny's, Inc.

The following is an outline of facts, which, unless otherwise noted, are undisputed. (When disputed, we accept the plaintiffs' version, as we are required to do when deciding a motion for summary judgment made by defendants.)

Between 2:15 a.m. and 2:30 a.m., the African American plaintiffs, Marchelle Woelfel, Mutinta Mazoka, and Antwaune Ponds arrived at the restaurant. There were six in the group, three of whom are not parties to the lawsuit. Between 2:40 a.m. and 2:45 a.m., five of the Asian American plaintiffs arrived: Derrick Lizardo and Li Chiu, followed by Sean Dugan, Yoshika Kusada, and Yuya Hasegawa. Plaintiffs Kyoko Hiraoka and Taiko Tatenami came later and expanded their party to seven.

The restaurant was crowded, and the staff was busy. It was the early morning "bar rush," a time when the area bars close and the patrons flock to nearby restaurants in search of food. All of the plaintiffs, with the exception of Hasegawa, had patronized the Regatta bar at the Sheraton Hotel before coming to Denny's. Plaintiffs do not dispute that when they arrived there were other people waiting

[*] Hon. Carol Bagley Amon, United States District Court for the Eastern District of New York, sitting by designation.

for tables, their names were not at the top of the waiting list, and there were a number of minorities seated throughout the restaurant, including one other Asian American and several African Americans. At least two smaller parties of Caucasians arrived after the plaintiffs but were seated before them.

Annoyed that other groups were being seated ahead of them, Plaintiff Chiu spoke with hostess Milissia Kirts about the length of the wait and suggested that their party was being discriminated against. Annoyed by the accusation, Ms. Kirts retorted, "Don't even go there." Lizardo complained, "this is ridiculous" and was physically escorted out of the restaurant by security officer Kenneth Adams. The remainder of the Asian Americans followed them out.

The specific circumstances surrounding the Kirts encounter and the ultimate ejection of one or more of the plaintiffs are disputed. Plaintiffs claim to have complained in a mildly irritated tone, whereas defendants describe the conduct of Chiu and particularly Lizardo as loud, obnoxious, and disruptive to other customers. Defendants contend that Lizardo was inebriated and profane and at one point called either Kirts or restaurant manager Sheri Campney a "bitch." According to defendants, only Lizardo was forced out of the restaurant, while plaintiffs differ among themselves on this point. Some claim that they were not specifically told to leave, but did not wish to stay after their friend had been ousted. Others say the entire group was told to go. It is agreed that Lizardo was the only one physically ejected.

After Adams escorted Lizardo outside, they exchanged words and Adams shoved him in the chest. Although disputed by defendants, Dugan also claims to have been shoved by Adams. By this time, a large group of patrons had exited the res-

taurant and gathered in the parking lot. A verbal exchange took place between one of the white patrons and plaintiff Dugan and a melee ensued with at least three or four separate physical confrontations erupting between several patrons and the Asian American plaintiffs. At approximately 2:58 a.m., security officer Adams called 911, stating that a fight had broken out and assistance was needed. The police arrived at 3:00 a.m. and the fights ended approximately two minutes later. Several of the Asian American plaintiffs were injured and required medical treatment.

African American plaintiffs Woelfel and Ponds were among those who left the restaurant to observe the hostilities in the parking lot. Mazoka remained inside. When Woelfel and Ponds returned, Woelfel used profanity in complaining about the conduct of the security guards during the parking lot incident. The restaurant manager approached the group and told them to be quiet or leave, which provoked the response from Ponds, "You need to get the f__ out of my face." Ponds was told to leave and was escorted out of the restaurant. Woelfel and Mazoka left with him. The group drove to another Denny's restaurant and were seated and served without incident.

## II. DISCUSSION

■■■ The legal standards governing our review are well-settled. We review the district court's grant of summary judgment *de novo. See Fagan v. New York State Elec. & Gas Corp.,* 186 F.3d 127, 132 (2d Cir.1999); *Bedoya v. Coughlin,* 91 F.3d 349, 351 (2d Cir.1996). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judg-

ment as a matter of law." Fed.R.Civ.P. 56(c). Confronted with a properly supported summary judgment motion, a plaintiff must come forward with evidence sufficient to allow a reasonable jury to find in his favor. *See McCarthy v. New York City Technical Coll.*, 202 F.3d 161, 167 (2d Cir.2000). It is incumbent upon a court in a discrimination case to examine "the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'" *Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir.2000) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000)).

### A) *Plaintiffs' § 1981 Claims*

Plaintiffs bring their discrimination claim under 42 U.S.C. § 1981 which provides that "[a]ll persons ... shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens." Subsection (b) of § 1981 defines "make and enforce contracts" to include "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." Plaintiffs claim to have been denied the right to contract for food service because of their race.

### 1) *Asian American Plaintiffs—§ 1981 Race Discrimination Claims*

The crucial issue is whether the evidence is sufficient to show that the denial of services occurred under circumstances giving rise to an inference of discrimination. In a painstaking review of the record, the district court concluded that the plaintiffs had failed to establish that white patrons had received preferential treatment in seating or that the plaintiffs had been the victims of markedly hostile treat-

ment supporting an inference of race discrimination.

▪ We agree that plaintiffs failed to establish that similarly situated patrons were given preferential treatment in seating or that plaintiffs' evidence of hostility gives rise to an inference of discrimination. When plaintiffs seek to draw inferences of discrimination by showing that they were "similarly situated in all material respects" to the individuals to whom they compare themselves, *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir.1997), their circumstances need not be identical, but there should be a reasonably close resemblance of facts and circumstances. *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir.2000); *see also McGuinness v. Lincoln Hall*, 263 F.3d 49 (2d Cir.2001). What is key is that they be similar in significant respects. *Id.*

▪ The district court's conclusion that the record failed to show that white patrons who were seated before them were similarly situated to plaintiffs is sound. Whether two people are similarly situated is usually a question of fact for the jury. *Graham*, 230 F.3d at 39. However, plaintiffs have not offered sufficient evidence from which a jury could reach that conclusion. As the district court noted, the groups to which plaintiffs sought to compare themselves were smaller in size, an obviously significant factor in restaurant seating. The plaintiffs identified three groups of individuals who were seated before them: the Warnock party of four Caucasians, a party of two to three Caucasians, and a third group of three to four Caucasians. The record is devoid of evidence that the tables at which these smaller groups were seated could have accommodated plaintiffs' original party of five, much less their expanded party of seven. Plaintiffs have failed to offer evi-

dence from which to conclude that they were similarly situated to these groups.[1]

Plaintiffs also suggest that defendants' "markedly hostile" treatment of them provides circumstantial evidence of defendants' intent to discriminate. Relying on *Callwood v. Dave & Buster's, Inc.*, 98 F.Supp.2d 694 (D.Md.2000), and *Christian v. Wal–Mart Stores, Inc.*, 252 F.3d 862 (6th Cir.2001), plaintiffs assert that they have met their burden of proving intentional discrimination with evidence that the Denny's employees' actions were "(1) so profoundly contrary to the manifest financial interests of the merchant and/or her employees; (2) so far outside of widely-accepted business norms; and (3) so arbitrary on [their] face, that the conduct supports a rational inference of discrimination." *Callwood*, 98 F.Supp.2d at 708. As evidence of markedly hostile treatment, plaintiffs list the failure of the hostess to greet them when they arrived, her "don't even go there" retort to Chiu's inquiry about the wait, Adams physically escorting Lizardo out of the restaurant, his shoving Lizardo, and the failure of the security guards to protect them in the parking lot brawl.

Although mistreatment by defendants is not irrelevant in assessing the strength of plaintiffs' circumstantial evidence of race-based animus, it is certainly not sufficient to establish it. We can envision many circumstances where markedly hostile treatment, even in a purportedly service-oriented industry, would raise no inference of racial animus, but rather it would simply be yet another example of the decline of civility. *Cf. Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 79 (2d Cir.2000) (discussing the general decline in the decorum of even polite discourse).[2]

■ In this case, the cited instances of hostility, considered in context, did little to support an inference of discriminatory intent. A failure to greet customers on an extremely busy evening and an exasperated—even testy—response to a complaint of discrimination do not constitute marked hostility as defined, nor are they conduct which should be presumed to have its origins in racial bias. Having been directed to remove Lizardo, the subsequent shoving of Lizardo and Dugan by the security officers in the heated exchange of words does suggest anger, but there is nothing to suggest that the anger stemmed from a bias against people of Lizardo's race.

■ Similarly, the security officers' failure to actively intervene on behalf of the Asian Americans during the parking lot brawl is also without probative force. Based upon the description of events, the officers' decision to call 911 instead of becoming actively involved in the fighting seemed a cautious one. In any event, there is nothing to suggest that it was an action taken based upon preference for the white patrons over the Asian Americans.[3]

■ Plaintiffs claim an inference of discrimination is supported by evidence that defendants gave false reasons for denying them services. Defendants said they denied services because Lizardo was loud,

---

1. Where it is undisputed that the restaurant help was stretched to its limits, the fact that plaintiffs were not seated at open tables in the smoking section is also not a fact supporting an inference of race discrimination.

2. Even if we were inclined to employ the markedly hostile standard, the conduct alleged does not meet that standard.

3. Further, judged against the *Callwood* standard, Adams and Paninski's conduct is not indicative of marked hostility. No evidence was offered that it was common for security officers to break up large fights outside of the restaurant or that such conduct is standard business practice.

profane, and vulgar, and that this conduct was disturbing other customers. Plaintiffs contend this was a false, pretextual reason. As support for this position, plaintiffs argue that the defendants tolerated far more egregious behavior of a white patron without asking him to leave. They cite to the conduct of white patron Christopher Warnock, who took part in the parking lot brawl and allegedly tried to grab officer Adams's gun outside of the restaurant. Addressing this latter argument first, we conclude that the conduct of Warnock, although hardly commendable, was not parallel to that of Lizardo, and does not call into question the credibility of defendants' justification. To begin with, Warnock's conduct took place outside of the restaurant, not inside where patrons are trying to eat. Warnock was not alleged at any time to have been abusive to the restaurant staff. There was no evidence that the restaurant manager had observed his conduct in the parking lot or that when he returned to the restaurant he engaged in any disruptive conduct. Accordingly, the Warnock comparison is not a sufficient evidentiary basis to infer that defendants' explanation was pretextual.

■ There is merit, however, to plaintiffs' position that their denials of disruptive conduct are evidence that defendants' proffered justification is pretextual. The court below concluded that plaintiffs could not show pretext by impermissibly determining that the weight of the evidence, including the non-party testimony, supported defendants' version of the events. This determination was inappropriate on summary judgment. Plaintiffs have proffered sufficient evidence of pretext by raising a genuine challenge to the truthfulness of the facts underlying defendants' explanations for their conduct.

■ Evidence of pretext, however, even combined with the minimal showing

necessary to establish a prima facie case under the burden-shifting scheme in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), does not mandate a denial of summary judgment. *See Slattery v. Swiss Reinsurance Amer. Corp.*, 248 F.3d 87, 94 (2d Cir.2001) (holding that plaintiff's prima facie case and evidence of pretext were not sufficient to survive defendant's motion for summary judgment); *James v. New York Racing Ass'n*, 233 F.3d 149 (2d Cir.2000) (same); *Schnabel v. Abramson*, 232 F.3d 83 (2d Cir.2000) (same). The court must examine the entire record to determine if plaintiffs meet their ultimate burden of persuading the fact-finder of a central element of a 1981 claim: namely, that defendants intentionally discriminated against them on the basis of their race. *See Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir.1993).

■ Whether summary judgment is appropriate here depends upon "the strength of the plaintiff[s'] prima facie case, the probative value of the proof that the [defendants'] explanation is false, and any other evidence" that supports the defendants' case. *Reeves*, 530 U.S. at 148–49, 120 S.Ct. at 2109. Here, as the district court observed, plaintiffs' prima facie case is weak. The only sustainable showing of disparate treatment was some evidence from which a jury could conclude that the defendants in times past may have been more tolerant of similarly bad behavior by white patrons. Plaintiffs' evidence of pretext, quite apart from its less than compelling evidentiary foundation, does not indicate that the defendants' proffered reason was a pretext for discrimination. *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 170 (2d Cir.2001) ("[Plaintiff] has not offered any evidence that the [defendant's] justifications, even if pretextual, served as a pretext for age discrimination." (internal quo-

tation marks omitted)); *James,* 233 F.3d at 155 n. 1 (2000) (suggesting that a simple denial of proffered reason for discrimination does not reasonably support an inference of discrimination). If, as plaintiffs contend, the defendants exaggerated or lied about plaintiffs' behavior, the record does not support a finding that they did so to mask race discrimination. No comment or statement made by the defendants had any racial content or overtone.[4] Moreover, minorities of both the African and Asian American races were seated and served in the restaurant that evening.

■ The record is barren of any direct evidence of racial animus. Of course, direct evidence of discrimination is not necessary. *Norton v. Sam's Club,* 145 F.3d 114, 119 (2d Cir.1998). If there is sufficient circumstantial evidence on which to build a case, it is for the jury to determine what inferences can be drawn from that evidence. However, a jury cannot infer discrimination from thin air. *Id.* Plaintiffs have done little more than cite to their mistreatment and ask the court to conclude that it must have been related to their race. This is not sufficient. *See id.* at 120 (explaining that anti-discrimination law "does not make [defendants] liable for doing stupid or even wicked things; it makes them liable for *discriminating* ").

2) *African American Plaintiffs—§ 1981 Race Discrimination Claims*

■ The African American plaintiffs have also failed to point to evidence that could support a reasonable finding of discrimination. They have not pointed to evidence sufficient to establish that they were denied services under circumstances giving rise to an inference of race discrimination. They argue that they were treated less favorably than similarly situated white patrons in two ways: white patrons who arrived after the plaintiffs were seated before them and white patrons were not ejected after engaging in behavior equally as egregious as theirs. We concur in the district court's analysis that the parties seated before them were not similarly situated. As discussed earlier, the groups were smaller in size and there is no evidence that any of these groups were seated at tables that could have accommodated the African American party of six.

■ Plaintiff Woelfel did testify that she saw two available booths, one clean and one dirty, in the smoking section and that one of the booths would have accommodated her party. The hostess indicated that she would clean off one of the booths for the African American plaintiffs; however, prior to seating plaintiffs, Kirts placed two white men at one of the booths. This circumstance, however, is not particularly probative of disparate treatment. There is no evidence that the African American party would not have been immediately seated at the remaining large booth, particularly since Kirts had already told them that she would seat them. Instead, however, it appears that several members of the group left the restaurant at that point to watch the disturbance in the parking lot, thus obviating their interest in immediate seating.

■ Plaintiffs also point to defendants' treatment of Warnock and claim that an-

---

4. Indeed, to the extent that there is any direct evidence of the state of mind of the Denny's employees, it is to the contrary. When Ms. Chiu accused Milissia Kirts of discrimination, her exasperated retort was "Don't even go there." Although plaintiffs claim that this response was evidence of hostility, it could easily be viewed as an expression of righteous indignation at even being accused of having such intent, made credible by its very spontaneity. Although the ultimate relevance of this comment would be for a jury to decide, it surely provides no evidence of discriminatory intent.

other white patron who used the "f" word was allowed to return to the restaurant and eat. However, plaintiffs can identify no white patron who, like Ponds, after cessation of the volatile events in the parking lot, returned to the restaurant and engaged in direct confrontation with the restaurant manager, using profane language. This sets Ponds apart from the other white patrons. Defendants cite this confrontation between Ponds and restaurant manager Campney as their non-discriminatory reason for ejecting the African American plaintiffs. Plaintiffs do not dispute that this happened and have failed to offer any evidence that would show discrimination. In sum, they offer no evidence to support the claim that the decision to eject them was based on race.

### 3) Asian American Plaintiffs— § 1981 Retaliation Claims

The district court erred in holding that plaintiffs' complaint failed to plead a claim for retaliation under 42 U.S.C. § 1981.[5] We agree with the district court, however, that plaintiffs have failed to present evidence sufficient to establish these claims.

▆▆▆▆ Retaliation claims are cognizable under § 1981. *See Choudhury v. Polytechnic Inst. of N.Y.*, 735 F.2d 38, 43–44 (2d Cir.1984). To establish retaliation, plaintiffs must show that plaintiffs were (1) engaged in an activity protected under anti-discrimination statutes, (2) the defendants were aware of plaintiffs' participation in the protected activity, (3) the defendants took adverse action against plaintiffs based upon their activity, and (4) a causal connection existed between plaintiffs' protected activity and the adverse action taken by defendants. *Cosgrove v.*

*Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir.1993).

▆▆▆ We affirm largely for the reasons given by the district court. The Asian American plaintiffs have not made out the elements of a retaliation claim. Lizardo admitted only to saying "this is ridiculous" before being escorted out. He claimed to have made no other statement to any Denny's employee indicating that he was the victim of discrimination. Further, he does not claim that he was aware that Chiu was complaining about discrimination. On these facts, the court correctly concluded that Lizardo could not make out a claim because he did not "demonstrate that he was exercising or attempting to exercise a right to be free from discrimination in a place of public accommodation." *Lizardo v. Denny's, Inc.*, No. 97–CV–1234 (FJS)(GKD), 2000 WL 976808 at *8 (N.D.N.Y. July 13, 2000). Plaintiffs counter that defendants admit that Lizardo was railing about discrimination, so the record evidence is sufficient to establish his claim. The district court concluded and we agree that plaintiffs cannot so neatly dissect the testimony. If they seek to rely on the defendants' account of Lizardo's statements, that account also establishes abundant evidence in support of defendants' non-discriminatory reason for ejecting him; namely, that the complaints were voiced in loud and profane language.

▆▆▆ The retaliation claim is not as straightforward as to Chiu. It is undisputed that Chiu complained about discrimination. What is missing is the connection between her complaint and any adverse action taken directly against her. She admits that she personally was not asked to leave. Although other plaintiffs testify

---

**5.** Paragraphs 60, 107, and 111 of the second amended complaint, which are incorporated by reference into the Second Cause of Action for violations of Title 42 U.S.C. § 1981, clear-

ly lay out the factual basis for the retaliation claim. Under Fed.R.Civ.P. 8, plaintiffs have properly pled a § 1981 retaliation claim.

that they thought the group was asked to leave, none of the Asian American plaintiffs besides Chiu claimed to have complained about discrimination or even to have known that Chiu was registering such a complaint. Accordingly, we agree with the district court's analysis of this claim.

4) *African American Plaintiffs—§ 1981 Retaliation Claims*

■ The African American plaintiffs also fail to make out a claim of retaliation. They were ejected from the restaurant in response to the confrontation between Ponds and Campney, not in response to any complaints about discrimination or the exercise of any protected activity. Ponds admits that he swore at Campney when she asked him to be quiet and testified that the confrontation happened after he had inquired about the wait and had returned to his seat in the waiting area. To the extent that the African American plaintiffs claimed to be exercising a protected activity because they were complaining about the conduct of the security officers during the fight, they have offered no evidence either that these were complaints directed to the restaurant staff and not a discussion amongst themselves, or that any Denny's employee understood them to be complaining about discrimination. Campney testified that she understood Woelfel to be complaining about how the security guards handled the fight in the parking lot, but did not indicate any understanding that the African–American plaintiffs were complaining about discrimination. Plaintiffs' claim for retaliation fails.

B) *Plaintiffs' 42 U.S.C. § 2000a Claims– Discrimination and Retaliation*

For the same reasons that the plaintiffs can not prevail on their § 1981 claims,

they can not do so under § 2000a.[6] Plaintiffs have failed to carry their ultimate burden of showing that they were denied services based upon their race or in retaliation for their complaints.

III. CONCLUSION

For the reasons stated above, the judgment of the district court granting summary judgment for the defendants is affirmed.

---

6. Because we find that the plaintiffs can not make out a retaliation claim, we need not reach the question of whether plaintiffs' § 2000a claims against NDI are moot.