**John C. NORTON, Plaintiff–Appellee,**

v.

**SAM'S CLUB, Wal–Mart Corp., Wal–Mart Stores, Inc., Defendants–Appellants.**

**Docket No. 97–7928.**

United States Court of Appeals, Second Circuit.

Argued April 7, 1998.

Decided May 29, 1998.

**116**

Michael J. Kanaley Jr., Kenney, Kanaley, Shelton & Liptak, L.L.P., Buffalo, NY, for Defendants–Appellants.

Theodore S. Kantor, Bilgore, Reich, Levine, Kroll & Kantor, Rochester, NY, for Plaintiff–Appellee.

Before: WINTER, Chief Judge, McLAUGHLIN, and CALABRESI, Circuit Judges.

CALBRESI, Circuit Judge:

Plaintiff John C. Norton sued Sam's Club, claiming that he had been fired because of his age in violation of the New York Human Rights Law ("NYHRL"), N.Y. Exec. Law § 296 *et seq.* (McKinney 1993 & Supp.1997), and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* The case went to a jury, which returned a verdict in favor of Norton and awarded him $30,000 in back pay. The court (Michael J. Telesca, *Judge*) thereupon granted him an additional $25,000 in front pay as well as attorney's fees and court costs of $12,355.02. Sam's Club appeals, arguing that the evidence at trial was insufficient to support the jury's verdict in favor of Norton. We agree, and reverse.

## I. FACTS & PROCEDURAL HISTORY

Sam's Club, a division of Wal–Mart, offers discount merchandise to individuals who buy memberships in the "club." Norton's job was to sell corporate memberships to executives of companies in the area around the Henrietta, New York, Sam's Club warehouse. When Norton was hired by Sam's Club in January 1991, he was fifty-three years old.

In January of 1993, Norton's manager, Ronny Rexrode, became concerned about Norton's productivity. Rexrode decided to spend a day trailing Norton while Norton was out making sales calls. Rexrode observed Norton spending approximately an hour at lunch with co-workers. Norton, however, marked only a thirty minute lunch break on his time card for that day. Rexrode considered this a "theft of time" and confronted Norton. Norton admitted that he had spent a long time at lunch that day, but denied that he had done anything wrong. He explained that he had been very upset because he had just learned that his elderly father was terminally ill, and that his co-workers had taken him out to lunch to cheer him up.

Rexrode nevertheless decided to fire Norton. Norton had previously been subject to disciplinary action for failing to follow Sam's Club procedures for making a sales appointment. As a result of that incident, he had been given a "decision day," which amounts to a day off with pay during which the em-

ployee is to deliberate on his actions and consider his future with the company. In addition, as previously noted, Rexrode had been dissatisfied with Norton's productivity. Rexrode indicated that Norton's "theft of time," combined with these factors, led him to dismiss Norton.

One of the other employees who had been at lunch with Norton, Richard Croce, was also fired for falsifying his time card. But two others who were at the long lunch, Joel Kasdin and Rick Seibert, were not dismissed. Although their time cards likewise indicated that they had taken only a half-hour lunch, their cards had been marked in error by their supervisor, rather than by Kasdin and Seibert themselves. As a result, they were not held responsible for the misstatement. Croce, Kasdin, and Seibert were all over forty years of age at the time of Norton's termination.

Norton contends that he was fired because of his age. In support of this position at trial, he pointed to the fact that Rexrode and most of the other Sam's Club managers were in their twenties and thirties, while Norton and the other person fired, Croce, were over forty. In addition, Norton testified that he was the oldest person present at a recent sales conference and that he was the only person sent home early from the conference. Finally, he suggested that the main reason given by Sam's Club to explain his termination—his "theft of time" on one occasion—was so inherently implausible that it had to be pretextual.

Sam's Club moved for judgment as a matter of law ("JMOL") at the close of the plaintiff's case and again at the conclusion of all the evidence. The case went to the jury, which returned a verdict for Norton. Sam's Club did not renew its JMOL motion after the verdict.

## II. DISCUSSION

On appeal, Sam's Club argues that the evidence was insufficient to support a finding of age discrimination and that the jury's verdict must therefore be reversed. We agree. But before we discuss the merits of this argument, we deem it appropriate to consider a procedural irregularity in the case.

### A. Procedural Matters

■ Sam's Club moved for judgment as a matter of law at the close of the plaintiff's case. It failed, however, to renew that motion after the jury returned its verdict. Under ordinary circumstances, this would present a significant problem for Sam's Club on appeal. We have held that "[t]o preserve for appeal a challenge to the denial of a pre-verdict motion for judgment as a matter of law, a movant must renew that motion after the verdict." *Varda, Inc. v. Insurance Co. of North Am.*, 45 F.3d 634, 638 (2d Cir.1995). And when a party does not make a renewed motion for JMOL after the verdict pursuant to Federal Rule of Civil Procedure 50(b), that party is deemed not to have preserved its challenge to the sufficiency of the evidence. *See id.*

■ In the case before us, however, the appellee has not properly preserved *his* right to object to the appellant's attempt to claim insufficiency of the evidence. While the preliminary section of Norton's brief mentions in passing that Sam's Club did not make a post-verdict motion for JMOL, it attributes no significance to that fact. Federal Rule of Appellate Procedure 28(b) requires that the appellee's brief contain a summary of argument, an argument, and, where the appellee is dissatisfied with appellant's statement of the issues, a statement of issues as perceived by the appellee. Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal. *See Frank v. United States*, 78 F.3d 815, 832–33 (2d Cir.1996), *vacated on other grounds*, —— U.S. ——, 117 S.Ct. 2501, 138 L.Ed.2d 1007 (1997).

Pursuant to this rule, we have held that an argument made only in a footnote was inadequately raised for appellate review. *See United States v. Restrepo*, 986 F.2d 1462, 1463 (2d Cir.1993). And we have concluded that merely incorporating by reference an argument presented to the district court, stating an issue without advancing an argument, or raising an issue for the first time in a reply brief likewise did not suffice. *See*

*Frank,* 78 F.3d at 833 (collecting cases).[1]

■ We think that the appellee's casual reference to the appellant's failure to make a post-verdict JMOL motion is insufficient to command the invocation of the rule of *Varda.* While the making of a renewed JMOL motion is mandatory, it is not jurisdictional. As a result, it can be waived, and, absent a request by the appellee, we have no duty to enforce the *Varda* requirement.[2]

Accordingly, we consider the merits of appellant's request for judgment as a matter of law.

### B. Sufficiency of the Evidence

■ We will upset a jury verdict only if there is "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture." *Stratton v. Department for the Aging,* 132 F.3d 869, 878 (2d Cir.1997) (internal quotation marks and citation omitted). We must view the evidence in the light most favorable to the party in whose favor the verdict was rendered, giving that party the benefit of all reasonable inferences that the jury might have drawn in his favor. *See id.* And we may not "assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute [our] judgment for that of the jury." *Id.* (internal quotation marks and citation omitted). A party seeking to overturn a verdict based on the sufficiency of the evidence bears a very heavy burden. We believe that Sam's Club has met that burden.

■ In order to establish a prima facie of age discrimination, the plaintiff must show (1) that he was in the protected age group; (2) that he was qualified for the position; (3) that he was discharged; and (4) that the discharge occurred under circumstances giving rise to an inference of discrimination.

*See, e.g., Woroski v. Nashua Corp.,* 31 F.3d 105, 108 (2d Cir.1994). "The burden of establishing a prima facie case is not onerous, and has been frequently described as minimal." *Scaria v. Rubin,* 117 F.3d 652, 654 (2d Cir.1997) (per curiam); *see St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

■ Once the plaintiff has established a prima facie case, the defendant has the burden of producing " 'reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action.' " *Grady v. Affiliated Cent., Inc.,* 130 F.3d 553, 559 (2d Cir.1997) (quoting *St. Mary's,* 509 U.S. at 507, 113 S.Ct. 2742). "If the defendant meets its burden of producing an age-neutral reason for the discharge, the presumption of discrimination raised by the prima facie case 'drops out of the picture.' " *Id.* at 559–60 (quoting *St. Mary's,* 509 U.S. at 511, 113 S.Ct. 2742); *see Fisher v. Vassar College,* 114 F.3d 1332, 1336 (2d Cir.1997) (in banc). The burden then returns to the plaintiff, who must adduce sufficient evidence to allow a rational fact finder to infer that the employer was motivated in whole or in part by age discrimination. *See Fisher,* 114 F.3d at 1336. In doing this, the plaintiff is entitled to rely "on the evidence constituting the prima facie case, together with supportable inferences to be drawn from the false or erroneous character of the employer's proffered reason for the adverse action." *Id.* at 1333.

The thick accretion of cases interpreting this burden-shifting framework should not obscure the simple principle that lies at the core of anti-discrimination cases. In these, as in most other cases, the plaintiff has the ultimate burden of persuasion. *See St. Mary's,* 509 U.S. at 507, 113 S.Ct. 2742 (" 'The ultimate burden of persuading the

---

1. This rule is, of course, tempered in *pro se* cases by our duty to construe liberally papers filed by *pro se* litigants. But in the case before us, the appellee is represented by counsel.

2. Even under *Varda,* the appellate court, which is precluded from ordering a JMOL, may nevertheless order a new trial in the absence of a post-verdict motion if it concludes that letting the verdict stand would result in "manifest injus-

tice." *See Varda,* 45 F.3d at 638. But, since appellee has waived his challenge, we need not decide whether that would be appropriate in the case before us. We note, however, that manifest injustice has been found where a plaintiff "failed to prove one of the four essential elements of [his claim.]" *Russo v. New York,* 672 F.2d 1014, 1022 (2d Cir.1982).

trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' ") (quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)); *Fisher,* 114 F.3d at 1333 ("[A] plaintiff in a discrimination case must show by a preponderance of the evidence that the reason for the adverse employment action was illegal discrimination.").

■ The plaintiff is not required to produce direct evidence of discrimination. *See Luciano v. Olsten Corp.,* 110 F.3d 210, 215 (2d Cir.1997). In this, as in other, areas of the law a case may be built entirely out of circumstantial evidence. *See, e.g., Burger v. New York Institute of Technology,* 94 F.3d 830, 833–35 (2d Cir.1996) (finding a jury question in an age discrimination case based wholly on circumstantial evidence); *cf. United States v. Viola,* 35 F.3d 37, 44 (2d Cir.1994) ("Participation in [a] conspiracy can be shown wholly through circumstantial evidence...."). Indeed, plaintiffs in discrimination suits often must rely on the cumulative weight of circumstantial evidence, since "[a]n employer who discriminates is unlikely to leave a 'smoking gun,' such as a notation in an employee's personnel file, attesting to a discriminatory intent." *Rosen v. Thornburgh,* 928 F.2d 528, 533 (2d Cir.1991); *see also Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 716, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983) ("There will seldom be 'eyewitness' testimony as to the employer's mental processes."); *Luciano,* 110 F.3d at 215. And we have rejected "the view that circumstantial evidence is inherently weaker than direct evidence." *United States v. Sureff,* 15 F.3d 225, 229 (2d Cir.1994). For, as we have explained:

> The entry into a house by a person wearing a wet raincoat and holding a wet, open umbrella may well be more reliable evidence of the climate than statements of a person inside the house looking out a window.... Circumstantial evidence is thus not a disfavored form of proof.

*Id.*

■ Moreover, it is primarily the province of the jury to determine what inferences can be drawn from circumstantial evidence.

So long as the evidence can reasonably support an inference of discrimination, the court should not upset the jury's decision. *Cf. Gallagher v. Delaney,* 139 F.3d 338 (2d Cir. 1998) ("Whatever the early life of a federal judge, she or he usually lives in a narrow segment of the enormously broad American socio-economic spectrum, generally lacking the current real-life experience required in interpreting subtle ... dynamics of the workplace....").

■ At the same time, however, a jury cannot infer discrimination from thin air. And thin air is all the plaintiff has produced in the case before us. Norton proved (1) that he was over forty years old when he was fired; (2) that the person who fired him was under forty years of age; and (3) that one other person who was fired around the same time as Norton was also over forty. Norton further suggested that the principal reason offered by Sam's Club for his dismissal (his having taken one long lunch) was preposterous.

Norton established, at best, an *extremely* weak prima facie case. It is not infrequent that people who are dismissed are fired by managers who differ from them in some respect—managers who are younger or older, or of a different race or gender. If that fact, without more, could suffice to support the finding of discrimination in the instant case, it would be hard to imagine a termination that could not be attributed to discrimination. And even if the jury could find that the explanation offered by Sam's Club for why it fired Norton was absurd, it is hard to see how this would add much of significance to Norton's case. *See Fisher,* 114 F.3d at 1345. Norton's very weak prima facie case, combined with an at best highly dubious showing of pretext, that in itself does not implicate discrimination, is simply not enough to support the jury's conclusion that he was fired because of his age.

■ At the same time, it is easy to see how a reasonable person could conclude from the facts of this case that it was *wrong* for Sam's Club to fire Norton. Many people would consider it an affront to their dignity to be secretly trailed by a supervisor as they

went about their work. And firing someone for taking a long lunch on a day when he was coping with serious family problems might seem to some to be unduly harsh. But the ADEA does not make employers liable for doing stupid or even wicked things; it makes them liable for *discriminating*, for firing people on account of their age. The record in the instant case is devoid of evidence, direct or circumstantial, sufficient to support a finding that Sam's Club fired Norton because of his age. Accordingly, we REVERSE.