**File Name: 05a0565n.06**
**Filed: July 6, 2005**
**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

No. 03-2318

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| CAROLYN COMSTOCK, | ) | |
| Personal Representative | ) | |
| for the Estate of Billy Wade | ) | **ON APPEAL** FROM THE |
| Montgomery, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| Plaintiff-Appellant, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| NORRIS MCCRARY, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

**Before: NELSON and MOORE, Circuit Judges, and RESTANI,[*] Judge.**

**RESTANI, J**. Plaintiff-Appellant Carolyn Comstock brought suit on behalf of the estate

of Billy Wade Montgomery, alleging violations of the Eighth Amendment and state tort law by

prison psychologist Norris McCrary. The district court denied Comstock's motion for judgment

as a matter of law and the jury returned a verdict in favor of McCrary. We review Comstock's

appeal of the district court's denial of her pre-verdict motion for judgment as a matter of law to

determine "whether there was sufficient evidence to raise a material question of fact for the

jury." Frost v. Hawkins County Bd. of Educ., 851 F.2d 822, 826 (6th Cir. 1988). For the

reasons set forth below, we **AFFIRM**.

---

[*] The Honorable Jane A. Restani, Chief Judge, United States Court of International
Trade, sitting by designation.

**I. BACKGROUND**

On March 3, 1995, Billy Wade Montgomery committed suicide while incarcerated at the Reception and Guidance Center (the "RCG") in Jackson, Michigan. Upon arriving at the RCG, Montgomery was screened for suicide prevention and referred to McCrary. McCrary interviewed Montgomery on March 2, 1995, and noted that "[c]urrently, inmate reports feeling suicidal, but with no specific plan. Lethality however appears to be moderate." Joint Appendix ("J.A.") at 157. McCrary recommended that Montgomery be placed on close observation status. Id.

On March 3, 1995, Montgomery met with physician's assistant David Howell, who observed:

> States that he is not depressed and has no thoughts of self-harm. States that his main problem is that other inmates have threatened to kill him because they believe he is a "snitch" – stated he had thoughts of dying in order to get locked down in safe area. No psychotic signs/symptoms noted.

Id. at 158. Later that day, McCrary interviewed Montgomery and observed that he was now calm and stable. Id. at 69. Montgomery told McCrary that he was no longer suicidal and that he did not feel threatened by other inmates. Id. McCrary recommended that Montgomery be removed from close observation status and subsequently he was moved to a cell in the Top-6 segregation area. Id. at 70-71. Montgomery committed suicide the same day. Id. at 163. The autopsy report stated that "[h]earsay and documented evidence suggests that he succumbed to the mental abuse and insidious manipulation of other inmates occupying nearby cells, who threatened to harm Mr. Montgomery at first opportunity." Id. at 164.

Carolyn Comstock brought suit as personal representative for Montgomery's estate under 42 U.S.C. § 1983 and Michigan law. She alleged that McCrary acted with deliberate

2

indifference to Montgomery's risk of suicide in violation of the Eighth Amendment, and with

gross negligence that proximately caused Montgomery's suicide in violation of state tort law.  At

the close of evidence, Comstock filed for judgment as a matter of law pursuant to Federal Rule

of Civil Procedure 50(a)(1) and the motion was denied.  On June 24, 2003, the jury rendered a

verdict in favor of McCrary.  Comstock did not renew her motion for judgment as a matter of

law pursuant to Federal Rule of Civil Procedure 50(b).  Presently, Comstock appeals the district

court's denial of her motion for judgment as a matter of law.

## II. DISCUSSION

### A.     McCrary has waived any objection to Comstock's failure to renew her motion for judgment as a matter of law.

As an initial matter, the court considers the effect of  Comstock's failure to renew her

motion for judgment as a matter of law under Rule 50(b).  Rule 50(b) reads:

> If, for any reason, the court does not grant a motion for judgment as a matter of
> law made at the close of all evidence, the court is considered to have submitted
> the action to the jury subject to the court's later deciding the legal questions raised
> by the motion.  The movant may renew its request for judgment as a matter of law
> by filing a motion no later than 10 days after entry of judgment – and may
> alternatively request a new trial or join a motion for a new trial under Rule 59.

Fed. R. Civ. Pro. 50(b).  We have stated that "where a defendant moves for directed verdict at

the close of plaintiff's testimony and does not renew its motion at the close of the entire

testimony, defendant waives its original motion and is precluded from questioning the

sufficiency of the evidence on appeal."  Young v. Langley, 793 F.2d 792, 794 (6th Cir. 1986).

The right to object to a failure to renew a motion for judgment as a matter of law can be waived

by the defendant, however, because making a renewed motion is not jurisdictional.  See Norton

v. Sam's Club, 145 F.3d 114, 118 (2d Cir. 1998).

Issues not raised in the appellate briefs are typically considered waived. See Brindley v. McCullen, 61 F.3d 507, 509 (6th Cir. 1995). Here, McCrary's response brief does not mention Comstock's failure to make a post-verdict motion for judgment as a matter of law. Therefore, we find that McCrary has waived any grounds for challenging Comstock's failure to renew her motion for judgment as a matter of law. Accordingly, we consider the merits of Comstock's challenge to the sufficiency of the evidence.

**B.      Sufficient evidence exists for jurors to find that McCrary did not act with deliberate indifference to Montgomery's risk of suicide.**

Comstock argues that McCrary displayed deliberate indifference to Montgomery's risk of suicide in violation of the Eighth Amendment's prohibition of cruel and unusual punishment. The Eighth Amendment places restraints on prison officials, including "the treatment a prisoner receives in prison and the conditions under which he is confined." Helling v. McKinney, 509 U.S. 25, 31 (1993). A prison official violates an inmate's Eighth Amendment rights when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

In the instant case, the parties do not dispute that Montgomery's suicidal tendencies posed a serious risk to his health and safety. See Horn v. Madison Cty. Fiscal Ct., 22 F.3d 653, 660 (6th Cir. 1994) (concluding that "psychological needs may constitute serious medical needs, especially when they result in suicidal tendencies"). Comstock argues that McCrary perceived a substantial risk of suicide when he placed Montgomery on close observation status on March 2, 1995, and was deliberately indifferent to Montgomery's suicide risk when he took him off close

4

observation status on March 3, 1995. Comstock asserts that no intervening event could have changed McCrary's risk assessment from one day to the next.

Viewing the evidence in the light most favorable to McCrary, we find sufficient evidence from which the jurors could have concluded that McCrary did not act with deliberate indifference to Montgomery's risk of suicide. McCrary testified that he perceived a change in Montgomery's demeanor from the prior day. J.A. at 69 – 70. He observed that Montgomery "talked in a calm manner, [he] was not anxious like the day before." Id. at 69. McCrary performed a mental assessment test and concluded that Montgomery seemed stable and in control of himself. Id. Montgomery told McCrary that no one was threatening him and that he was not suicidal. Id. McCrary testified that he would not have removed Montgomery from close observation status if he thought Montgomery was a suicide risk. Id. at 70.

Comstock points to evidence showing that McCrary could have taken additional steps in evaluating Montgomery on March 3, 1995, which may have alerted him to Montgomery's risk of suicide. McCrary concedes that he violated the policies and procedures of the Michigan Department of Corrections by failing to review Montgomery's institutional and health care files. Id. at 41-42. McCrary's failure to thoroughly review Montgomery's case may have been negligent conduct, but this evidence does not show that McCrary was aware that Montgomery was hiding his intention to commit suicide. On the contrary, the evidence suggests he merely failed to review materials which may have made him aware of a greater risk. Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety." Whitley v. Albers, 475 U.S. 312, 319 (1986). Accordingly, Comstock was not entitled to judgment as a matter of law with regard to her Eighth Amendment claim.

5

**C.** **Sufficient evidence exists for jurors to find that McCrary is immune from tort liability under the Michigan Governmental Tort Liability Act.**

Under the Michigan Governmental Tort Liability Act, government employees are immune from tort liability provided certain conditions are met, including that the employee's tortious conduct does not amount to "gross negligence that is the proximate cause of the injury or damage." Mich. Comp. Laws § 691.1407(2) (2005). Gross negligence is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." § 691.1407(7)(a). In order to show proximate cause, Michigan courts require that the grossly negligent conduct be "the one most immediate, efficient, and direct cause preceding an injury." Robinson v. City of Detroit, 613 N.W.2d 307, 317 (Mich. 2000). Comstock argues that McCrary's recommendation to remove Montgomery from close observation status was gross negligence that proximately caused his suicide.

Viewing the evidence in the light most favorable to McCrary, we find sufficient evidence from which the jurors could have concluded that McCrary did not act with gross negligence that was the proximate cause of Montgomery's suicide. First, McCrary's decision to remove Montgomery from close observation status did not demonstrate a substantial lack of concern for Montgomery's risk of suicide. Second, the most immediate cause of Montgomery's suicide was his own volitional act of committing suicide. See Soles v. Ingham County, 316 F. Supp. 2d 536, 546 (W.D. Mich. 2004). Accordingly, Comstock was not entitled to judgment as a matter of law with regard to her gross negligence claim.

6

### III. CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's denial of Comstock's motion for judgment as a matter of law.