**Arben TANA, Petitioner,**

v.

**Alberto R. GONZALES,[1] Attorney General, Respondent.**

**No. 03–4978.**

United States Court of Appeals, Second Circuit.

Nov. 10, 2005.

Parker Waggaman, New York, New York, for Petitioner.

David L. Huber, United States Attorney for the Western District of Kentucky (Madison Sewell, Assistant United States

---

1. Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Alberto R. Gonzales is automatically substituted for former Attorney General John Ashcroft as respondent in this case.

Attorney), Louisville, Kentucky, for Respondent, of counsel.

PRESENT: CARDAMONE, JACOBS, and B.D. PARKER, Circuit Judges.

## SUMMARY ORDER

Arben Tana, through counsel, petitions for review of the BIA decision affirming the Immigration Judge's ("IJ") decision denying his applications for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). We assume the parties' familiarity with the underlying facts and procedural history.

This Court reviews the IJ's decision where, as here, the BIA summarily adopted or affirmed the IJ decision without opinion. *See Twum v. INS*, 411 F.3d 54, 58 (2d Cir.2005). This Court reviews the IJ's and BIA's factual findings under the substantial evidence standard, and as such, "a finding will stand if it is supported by 'reasonable, substantial, and probative' evidence in the record when considered as a whole." *Secaida–Rosales v. INS*, 331 F.3d 297, 307 (2d Cir.2003) (quoting *Diallo v. INS*, 232 F.3d 279, 287 (2d Cir.2000). Credibility determinations are also typically reviewed under the substantial evidence standard, and this Court's review of an adverse credibility determination is "highly deferential." *Xu Duan Dong v. Ashcroft*, 406 F.3d 110, 111 (2d Cir.2005 (*per curiam*). When the "IJ's adverse credibility finding is based on specific examples in the record of . . . contradictory evidence or inherently improbable testimony . . . , [this Court] will generally not be able to conclude that a reasonable adjudicator was compelled to find otherwise." *Id.* (quoting *Zhou Yun Zhang v. INS*, 386 F.3d 66, 74 (2d Cir.2004)).

1. *Documentary Evidence.* The IJ expressed concern over Tana's lack of arrest records, medical records, or party membership card. When asked if he had any arrest records, Tana replied that the court holding them had burned, but that he had some of them. Given that Tana indicated that he had some of the records, the IJ could reasonably have concluded that his failure to produce any records was "more a product of [Tana's or his lawyer's] oversight or neglect than of the documents' unavailability." *Zhou Yun Zhang*, 386 F.3d at 78.

Regarding the political party membership card, Tana testified that he had given his lawyer some documentation to prove he was a member of Balli Kombetar, but that he did not have a membership card with him. The IJ found the "Certificate of Status Acknowledgment" form, which Tana submitted instead, to be not particularly convincing.

2. *Weaknesses and Contradictions in Testimony.* Tana's testimony suggested that Balli Kombetar was more popular and better represented in Albania than the country reports indicated. He also indicated that his party was allied with several other parties, forming a "Coalition Party." The IJ noted that the country reports stated otherwise. Further, the IJ was disturbed by Tana's apparent inability to distinguish between Social Democrats and National Socialists (Nazis). Tana said little on this point other than that his party was for "democracy" and "social democracy." Since Tana claims that he adhered to the Party in the face of persecution, and left his native land for that reason, his lack of knowledge of Balli Kombetar's history, allegiances, and popular support is relevant to establishing his credibility. As to whether Tana was persecuted, the IJ was disturbed by testimonial weaknesses, such as Tana's inability to state correctly the date of the election when he was allegedly arrested for protesting voting irregularities. The IJ also found that the country

reports, while confirming details from Tana's story about mass protests and arrests, suggested much less dramatic incidents of repression than Tana had described. The IJ concluded that the stories were most likely fabricated, or at least exaggerated.

3. *Contradiction Regarding When Tana Decided to Leave Albania.* The IJ expressed concern over the chronology of Tana's alleged 1999 arrest in his house, his first contact with the smuggler, and his decision to leave Albania. Tana first testified that he decided to leave Albania and quit work a month and a half before his departure at the end of November 1999. Later, he testified that the November 8, 1999 arrest in his home sparked this decision. Viewing all this testimony together, the IJ concluded that, at best, Tana had exaggerated the arrest story to "provide some recent, fresh act of repression against him that justified his decision to leave Albania and come illegally to the United States," and at worst, completely invented the entire story. There was no error.

Substantial evidence supports the IJ's negative credibility findings. The CAT claim is waived because it was not addressed on appeal. *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir.1998). The order of the BIA is accordingly AFFIRMED and the petition for review is DENIED.