Kastriot VILA, Petitioner,

v.

Alberto R. GONZALES,[1] Attorney General, Respondent.

No. 03–40391–AGNAC.

United States Court of Appeals, Second Circuit.

Dec. 13, 2005.

---

1. Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Alberto R. Gonzales is automatically substituted for former Attorney General John Ashcroft as a respondent in this case.

**336**

Tamara A. French, Detroit, Mich, for Petitioner.

Jamie M. Bennett, Assistant United States Attorney, for Allen F. Loucks, United States Attorney for the District of Maryland, Baltimore, Md, for Respondent.

Present: WALKER, Chief Judge, CALABRESI, and POOLER, Circuit Judges.

## SUMMARY ORDER

UPON DUE CONSIDERATION of this petition for review of a decision of the Board of Immigration Appeals ("BIA"), IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the petition for review be GRANTED in part and DENIED in part, the BIA's order be VACATED in part, and the case be REMANDED for further administrative review.

Petitioner Kastriot Vila, a citizen and national of Albania, petitions for review of an order of the BIA, affirming a decision of an Immigration Judge ("IJ"). The IJ rejected petitioner's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). We assume the parties' familiarity with the facts, the procedural history, and the issues on appeal.

We review the agency's factual findings, including adverse credibility determinations, under the substantial evidence standard. See 8 U.S.C. § 1252(b)(4)(B); *Jin Hui Gao v. U.S. Attorney Gen.*, 400 F.3d 963, 964 (2d Cir.2005); *Zhou Yun Zhang v. INS*, 386 F.3d 66, 73–79 (2d Cir.2004); *Ramsameachire v. Ashcroft*, 357 F.3d 169, 178–82 (2d Cir.2004); *Secaida–Rosales v. INS*, 331 F.3d 297, 306–13 (2d Cir.2003); *Diallo v. Ashcroft*, 232 F.3d 279, 286–88 (2d Cir.2000). Applying this principle to this case, we conclude that only some of the inconsistencies cited by the IJ are sufficiently apparent on the record. We can readily discern that petitioner did provide conflicting reports as to the authenticity and the content of his Democratic Party membership dues booklet. But the discrepancies identified by the IJ are the sort of "minor and isolated" disparities concerning collateral facts that would not provide a sound basis for discrediting an applicant's otherwise consistent testimony regarding his Democratic Party membership. *Diallo*, 232 F.3d at 288 (finding that

inconsistent testimony often bears a legitimate nexus to an adverse credibility finding, but it need not be fatal if it is "minor and isolated," and the testimony is otherwise generally consistent, rational, and believable).

The reason the IJ deemed other statements so inconsistent as to undermine credibility is not plain from the record. For example, the IJ found that petitioner stated, during his direct testimony, that he had been arrested at the funeral for Azem Hajdari and taken to the police station where he was beaten, but, when questioned by the IJ, petitioner stated that he had been beaten on the street and then taken to the police station. This finding is not clearly supported by the record, because petitioner was asked, on direct, "[W]hat happened after you were arrested?," and he responded, "I was taken to the police station and I was released after 24 hours when everything has come down and I was threatened and beaten." A fair reading of this testimony indicates that petitioner testified that he was beaten some time after his arrest, not that he was beaten after he was taken to the police station. Notably, the IJ emphasized petitioner's failure to submit evidence of his arrests or beatings during the Hadjari funeral; however, the IJ did not explain how such evidence should have been reasonably obtainable. *See Secaida–Rosales,* 331 F.3d at 311 (noting that IJ had erroneously faulted petitioner for not producing corroborative evidence without explaining why the evidence should have been reasonably obtainable). To the extent that the IJ found that petitioner failed to "mention[ ] who he went to the capital with, how he got there, what exactly led to his release, etc.," there was nothing inherently suspect about petitioner's failure to volunteer these details when he was never asked about them during his direct testimony, on cross-examination, or when questioned by the

IJ. "Like outright inconsistencies, the impact of omissions must be measured against the whole record before they may justify an adverse credibility determination." *Id.* at 308.

Further complicating our review is the IJ's apparent reliance on a serious error of fact. *See Zhou Yun Zhang,* 386 F.3d at 74 (noting that reviewing court must ensure that credibility findings are not based upon "a misstatement of the facts in the record"). The IJ found that, because the Democratic Party won the election, "it [was] difficult to understand why [the Socialist Party members] would threaten him to try to cover up alleged voting fraud...." Although we cannot consider petitioner's proffered evidence that the results for the 2000 elections were not available until October 8, 2000, because it was not presented to the BIA, *see Correa v. Thornburgh,* 901 F.2d 1166, 1171 (2d Cir. 1990) (holding that claims not presented to the IJ and BIA should be dismissed for failure to exhaust administrative remedies), we recognize that nothing in the record supports the IJ's assumption that the Democratic Party had been announced as the winner when petitioner was allegedly beaten on October 2, 2000, one day after the elections. Similarly, the IJ incorrectly analyzed petitioner's testimony and drew incorrect conclusions therefrom, in identifying a conflict between petitioner's testimony about "how members of the Socialist Party were trying to vote twice in his village ... for the election in October of 2000" and his later testimony that "he had no reason to think they had voted any place else before, except that they were not on the list in his polling place." A review of petitioner's application for relief and testimony indicates that he alleged, throughout the removal proceedings, that those individuals who had ballots "in their hands," but were not on "lists," were as-

sumed to have "their names ... on lists in other places, in other cities," where they could or did exercise their right to vote. Testimony regarding the absence of ballot-holders' names on lists and voting irregularities is not inherently contradictory. These factual misunderstandings are sufficiently serious that we cannot confidently assume that, in their absence, the IJ would have reached the same adverse credibility conclusion.

Likewise, the IJ's alternative finding that "it is still not clear that [petitioner] has a well-founded fear of persecution in the future" is not supported by substantial evidence. The IJ placed too much weight on petitioner's testimony that he does not currently stay informed of Albanian political events or read Albanian language newspapers. Such testimony does not necessarily imply that petitioner would *not* be politically active if he returned to his country. Again, there is nothing inherently suspect about petitioner's failure to volunteer details regarding whether he would be politically active if he returned to Albania when he was never asked this during his direct testimony, on cross-examination, or when questioned by the IJ. Also, despite the IJ's finding that the political situation in Albania has shown "gradual improvement," petitioner properly acknowledges that this does not mean that the country conditions have changed entirely. All of the reports submitted by the parties support petitioner's assertion that pro-democracy, anti-communist political dissidents are, not rarely, detained, arrested, interrogated, jailed, and even killed by government agents.

■ Nevertheless, because certain inconsistencies relevant to credibility were properly identified, and because we do not ourselves attempt to assess an applicant's credibility, we cannot conclude on the record before us that relief from removal was so plainly compelled as to warrant reversal of the BIA order. Instead, we grant the petition for review in part, as it relates to petitioner's claims for asylum and withholding of removal, vacate the BIA's order in part, and remand to the BIA for further proceedings. *See, Cao He Lin v. U.S. Dep't of Justice,* 428 F.3d 391, 406 (2d Cir.2005) (finding that vacatur is appropriate where "the erroneous aspects of the IJ's reasoning are not tangential to the findings she made and that the evidence supporting her findings is not so overwhelming that it is clear she would reach the same results on remand"); *Alvarado–Carillo v. INS,* 251 F.3d 44, 46–47 (2d Cir.2001) (vacating and remanding administrative decision below because adverse credibility finding was insufficiently supported).

■ Petitioner has abandoned any challenge to the IJ's denial of his claim for withholding of removal under CAT and its implementing regulations, *see* 8 C.F.R. § 208.16(c), by failing to discuss this claim anywhere in his briefs. *See Norton v. Sam's Club,* 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal."). We therefore deny the petition for review in part and affirm the BIA's order in part, as they relate to petitioner's claim for relief under CAT.

Having completed our review, any stay of removal that the Court previously granted in this petition is VACATED, and any pending motion for a stay of removal in this petition is DENIED as moot. Any pending request for oral argument in this petition is DENIED in accordance with Federal Rule of Appellate Procedure 34(a)(2), and Second Circuit Local Rule 34(d)(1).

For the foregoing reasons, the petition for review is GRANTED in part and DE-

NIED in part, the BIA's order is VACATED in part, and the case is REMANDED to the BIA for further proceedings consistent with this order.