17-218-pr
Kearney v. D. Gebo

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of November, two thousand seventeen.

PRESENT:
> GERARD E. LYNCH,
> SUSAN L. CARNEY,
> *Circuit Judges*,
> ERIC N. VITALIANO,*
> *District Judge.*

_____

Richard Kearney,

*Plaintiff-Appellant*,

v.                                                                          17-218-pr

D. Gebo, Correction Officer, Great Meadow Correctional Facility, M. Ross, Correction Officer, Great Meadow Correctional Facility, Rae, Sgt., Coxsackie Correctional Factility, FKA Roe,

*Defendants-Appellees*,

_____

* Judge Eric N. Vitaliano, of the United States District Court for the Eastern District of New York, sitting by designation.

1

**NYS DOCCS, Jon Miller, M.D., Coxsackie Correctional Facility, Jane Doe, Nurse, Coxsackie Correctional Facility,**

*Defendants.***

_____

**FOR PLAINTIFF-APPELLANT:** Richard Kearney, pro se, Stormville, NY.

**FOR DEFENDANTS-APPELLEES:** Eric T. Schneiderman, Attorney General of the State of New York (Jonathan D. Hitsous, Assistant Solicitor General, Barbara D. Underwood, Solicitor General, Andrea Oser, Deputy Solicitor General, *on the brief*), Albany, NY.

Appeal from a judgment of the United States District Court for the Northern District of New York (D'Agostino, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court entered on January 5, 2017, is **AFFIRMED**.

Appellant Richard Kearney, incarcerated and proceeding pro se, appeals the District Court's judgment dismissing his claims, brought pursuant to 42 U.S.C. § 1983, in which he alleges that on March 9, 2012, at Coxsackie Correctional Facility in Coxsackie, New York, two corrections officers beat him and another officer aware of the assault improperly failed to intervene. Kearney alleges that he complained about the incident to the New York State Department of Corrections and Community Supervision ("DOCCS") Inspector General's Office and to the New York State Commission of Correction.[1] After holding an evidentiary hearing, the

_____

** The Clerk of Court is directed to amend the official caption to conform to the above.

[1] Kearney's pro se complaint states that he also wrote to Coxsackie's superintendent regarding the alleged assault. Kearney does not, however, mention this communication in his brief on appeal, and thus any

2

District Court ruled in favor of defendants on their exhaustion-of-remedies defense and dismissed Kearney's claims. The District Court concluded that Kearney was subject to the Prison Litigation Reform Act's ("PLRA") requirement that he exhaust his administrative remedies before bringing suit, and that he failed to do so. The District Court noted that Kearney's complaints to the Inspector General's Office and Commission of Correction did not comply with New York's inmate grievance procedures, and found that the regular inmate grievance procedures remained available to him even when he was in the facility's Special Housing Unit ("SHU"). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, to which we refer only as necessary to explain our decision to affirm.

We review *de novo* a district court's ruling as to whether a plaintiff has exhausted administrative remedies as required by the PLRA. *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 121–22 (2d Cir. 2016). We review for clear error a district court's findings of fact and its credibility determinations made following an evidentiary hearing. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 575 (1985).

The PLRA requires prisoners to exhaust available administrative remedies before bringing a Section 1983 action related to "prison conditions." 42 U.S.C. § 1997e(a). The exhaustion requirement applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The PLRA further demands compliance with the prison grievance system's procedural rules regarding administrative remedies. *See Woodford v. Ngo*, 548 U.S. 81, 93–95 (2006). New York law calls for prisoners generally to follow a

---

argument that the District Court insufficiently addressed this allegation is waived. *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998).

grievance procedure comprised of three steps: (1) filing a complaint to be resolved by the Inmate Grievance Resolution Committee ("IGRC"); (2) appealing an adverse decision by the IGRC to the superintendent of the facility; and (3) appealing any further adverse decision by the superintendent to the prison system's Central Office Review Committee ("CORC"). N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 7, §§ 701.1(c) (setting out complaint filing and appeals framework), 701.5 ("Procedure"); *see also* NYCRR tit. 7, §§ 701.7 ("Procedures for inmates in special housing units (SHU's)"), 701.8 (setting forth "expedited procedure" for review of "employee harassment" allegations).

Exhaustion is mandatory, however, only as long as a grievance process is actually "available" to the prisoner. *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). Courts treat a prison grievance procedure as not available in three circumstances: when (1) it "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859–60.

Kearney does not dispute that he failed to comply with the state's prison grievance procedures. Kearney argues, instead, that exhaustion is an affirmative defense, *see Jones v. Bock*, 549 U.S. 199, 216 (2007), and that defendants did not establish the defense; indeed, he says, the grievance procedures were not "available" to him, as that term has been interpreted by the Supreme Court, *see Ross*, 136 S. Ct. at 1858–60.

Kearney first observes that defendants offered no testimony about the availability of the ordinary prison grievance procedures and the standard grievance forms from correction officers

4

who worked in the SHU where Kearney was housed, within the Coxsackie prison. We are unconvinced. Whether or not the standard inmate grievance form was available to Kearney when he lived in the SHU, New York regulations expressly allow for grievances to be submitted "on plain paper" when the grievance form is not readily available. *See* NYCRR tit. 7, § 701.5(a)(1). The unrebutted testimony offered by defendants established that inmates could and sometimes did submit grievances on many different kinds of paper, rather than on the preprinted form. Furthermore, Kearney testified that he had access to writing supplies while in the SHU and that he was able to send complaints to the Inspector General's Office and to the Commission of Correction. The District Court thus had before it evidence that inmate grievances could be filed on any kind of paper, that Kearney had access to writing materials while in the SHU, and that Kearney's written complaints to the Inspector General's Office and the Commission of Correction reached their intended recipients. We see no error in the District Court's conclusion on the basis of this evidence that defendants established that Kearney could have filed a grievance.

Kearney also contends that the inmate grievance procedure was "unavailable" to him under *Ross v. Blake*, 136 S. Ct. 1850 (2016), because he complained about the alleged beating to the Inspector General's Office and Commission of Correction and was assured that they were investigating his complaint—suggesting, he claims, that no more was required. Kearney's pursuit of alternative relief from the Inspector General's Office and Commission of Correction did not render the ordinary inmate grievance procedures "unavailable" to him, such that he is excused from complying with those ordinary procedures. Their pendency did not preclude him from filing a grievance. Nor do any assurances Kearney received that these offices were considering his complaint warrant a finding that prison administrators thwarted Kearney from pursuing the

ordinary grievance procedures "through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1859–60. There may be circumstances, such as those presented in *Ross*, *see id.* at 1860–62, in which an inmate is foreclosed from submitting a grievance by virtue of a concurrent administrative investigation, but the record here does not support such a finding. We therefore reject Kearney's argument that the District Court erred in finding that the inmate grievance procedures were available to him.

We have considered all of Kearney's remaining arguments and conclude that they are without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk