21-2698-cv
*Steamfitters Local 449 Pension Plan et al. v. AT&T Inc.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of December, two thousand twenty-two.

Present:

> GERARD E. LYNCH,
> WILLIAM J. NARDINI,
> STEVEN J. MENASHI,
> *Circuit Judges*.

---

STEAMFITTERS LOCAL 449 PENSION PLAN, IRON WORKERS LOCAL 40, 361 & 417 UNION SECURITY FUNDS, IRON WORKERS LOCAL 580 JOINT FUNDS, LOCAL 295 IBT EMPLOYER GROUP PENSION FUND, MELVIN GROSS, Individually and on behalf of all others similarly situated,

*Plaintiffs-Appellants*,

v.                                          21-2698-cv

AT&T INC., JOHN J. STEPHENS, SAMUEL A. DI PIAZZA, JR., RICHARD W. FISHER, SCOTT T. FORD, GLENN H. HUTCHINS, WILLAM E. KENNARD, MICHAEL B. MCCALLISTER, BETH E. MOONEY, JOYCE M. ROCHE, MATTHEW K. ROSE, CYNTHIA TAYLOR, GEOFFREY Y. YANG, LAURA D. TYSON, BRAD BENTLEY, JOHN DONOVAN, JOHN T. STANKEY, BRIAN J. SHAY, RANDALL L. STEPHENSON,

*Defendants-Appellees*.

1

For Plaintiffs-Appellants:    JEREMY A. LIEBERMAN (Emma Gilmore, Villi A. Shteyn *on the brief*), Pomerantz LLP, New York, NY; Carol Villegas, Jake Bissell-Linsk, David Saldamando, *on the brief*, Labaton Sucharow, New York, NY.

For Defendants-Appellees:    WILLIAM B. MONAHAN (Robert A. Sacks, Leonid Traps, *on the brief*), Sullivan & Cromwell LLP, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Valerie Caproni, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the district court is **AFFIRMED**.

Plaintiffs appeal from a judgment of the United States District Court for the Southern District of New York (Valerie Caproni, *Judge*) entered on September 28, 2020, dismissing their amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and an order entered on September 27, 2021, denying leave to amend their complaint as futile. Plaintiffs, acquirers of stock in AT&T during the relevant time period, alleged that AT&T and several of its executives made a variety of misstatements regarding the subscriber growth and profitability of one of its products, DirecTV Now ("DTVN"), a streaming service that it launched on November 30, 2016. Specifically, they allege that statements regarding DTVN's profitability were untrue because the product was not priced at profitable levels throughout the relevant time period and that statements regarding DTVN's subscriber growth were untrue because those numbers were inflated by fraudulent sales tactics used by AT&T's retail sales staff. Under the Securities Exchange Act (the "Exchange Act"), Plaintiffs asserted claims under Section 10b, 15 U.S.C. § 78j(b), Rule 10b-5, 17

C.F.R. § 240.10b-5 (Count I); Section 10b, Rules 10b-5(a) and (c) (Count II); and Section 20(a), 15 U.S.C. § 78t(a) (Count III).  Under the Securities Act, Plaintiffs asserted claims under Section 11, 15 U.S.C. § 77k (Count IV); Section 12(a)(2), 15 U.S.C. § 77*l*(a)(2) (Count V); and Section 15, 15 U.S.C. § 77o (Count VI).[1]

In its carefully reasoned Memorandum and Order dated September 27, 2021, the district court denied leave to amend the Proposed Second Amended Complaint ("PSAC") on the basis of futility.  Because Plaintiffs' briefing focuses entirely on whether the PSAC stated a claim, we construe their arguments on appeal as focusing exclusively on the district court's conclusion that amendment to the PSAC would be futile.  When a district court denies leave to amend based on a legal conclusion such as futility, we review that denial *de novo*.  *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012).  We assume the parties' familiarity with the case.

## I. Exchange Act claims

Plaintiffs argue that the district court erred because the PSAC adequately alleged material misstatements and scienter.  Plaintiffs make no argument that Counts II or III can otherwise survive, and we limit our review to the issues raised.  *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal.").

Section 10(b) of the Exchange Act makes it unlawful "[t]o use or employ, in connection with the purchase or sale of any security[,] . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or

---

[1] Appellants appear to have misnumbered the counts in the Proposed Second Amended Complaint.  We number them consecutively here.

appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). SEC Rule 10b–5 implements this provision of the Exchange Act and explicitly prohibits "mak[ing] any untrue statement of a material fact." 17 C.F.R. § 240.10b–5(b). "To state a claim under Rule 10b–5 for misrepresentations, a plaintiff must allege that the defendant (1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the proximate cause of its injury." *Employees' Ret. Sys. of Gov't of the Virgin Islands v. Blanford*, 794 F.3d 297, 305 (2d Cir. 2015) (internal quotation marks omitted).

"Any complaint alleging securities fraud must satisfy the heightened pleading requirements of the [Private Securities Litigation Reform Act ('PSLRA')] and Fed. R. Civ. P. 9(b) by stating with particularity the circumstances constituting fraud." *Id.* at 304 (internal quotation marks omitted). "To satisfy the pleading standard for a misleading statement or omission under Rule 9(b), a complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* at 305 (internal quotation marks omitted). Under the PLSRA, claims alleging violations of the Exchange Act "must specify 'the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.'" *Id.* (quoting 15 U.S.C. § 78u-4(b)(1)(B)).

Plaintiffs first argue that the PSAC alleged actionable misstatements. We disagree. The PSAC alleged 27 material misstatements or omissions: four of these relate to AT&T employee behavior, 17 relate to DTVN's subscriber growth, and six relate to DTVN's profitability. Ten of the alleged misstatements are inactionable as puffery. A statement or omission is material if "there

4

is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to [act]." *ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 197 (2d Cir. 2009) (alteration in original) (internal quotation marks omitted). "Generic, indefinite statements of corporate optimism typically are not actionable" because reasonable investors do not place "substantial reliance on generalizations regarding a company's health or the strength of a company's product." *Abramson v. Newlink Genetics Corp.*, 965 F.3d 165, 173 (2d Cir. 2020). This includes a variety of statements that courts describe as "puffery," including general promotional language about a product or company, statements of a company's integrity, and positive forward-looking statements. *See, e.g.*, *JP Morgan Chase Co.*, 553 F.3d at 206; *see also City of Pontiac Policemen's & Firemen's Ret. Sys. v. DBS AG*, 752 F.3d 173, 183 (2d Cir. 2014) ("It is well-established that general statements about reputation, integrity, and compliance with ethical norms are inactionable puffery, meaning that they are too general to cause a reasonable investor to rely upon them." (internal quotation marks omitted)). Four of the alleged misstatements are nothing more than general statements regarding the integrity of AT&T employees, commitments to ethical behavior, and the company's code of conduct. App'x 745–47, ¶¶ 228, 230, 232, 234. These statements are plainly too generic to have been consequential. *See City of Pontiac*, 752 F.3d at 183.

All six alleged misstatements regarding DTVN's profitability also are not actionable. Four of these statements were made before, or within a few days, of the launch of DTVN. App'x 826–28, ¶¶ 484, 486, 488, 490. These statements are simply general statements of corporate optimism about a soon-to-launch, or just-launched, product; they are not assertions that DTVN was, or would certainly be, profitable. *See Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004) ("People in charge of an enterprise are not required to take a gloomy, fearful or defeatist view of the future;

5

subject to what current data indicates, they can be expected to be confident about their stewardship and the prospects of the business that they manage." (citations omitted)). The remaining two alleged misstatements regarding DTVN's profitability also fail. The statement made on November 8, 2017, was merely another optimistic, forward-looking statement regarding DTVN's profitability. App'x 829, ¶ 493 ("So we'd expect to get, whether they'll be at traditional margin levels, I'm not recommending—I'm not advising that, but very solid margin levels on a very low-cost upfront product"). The final alleged misstatement concerning profitability does not relate to DTVN at all, a fact apparent when the statement is read in its full context, and thus can be disregarded. *See* App'x 829–830, ¶ 495; Supp. App'x 771–72.

The remaining seventeen alleged misstatements fare no better. Each of these statements involve AT&T or its executives stating specific figures for DTVN net subscriber growth or total subscribers. App'x 743–53, ¶¶ 218, 220, 222, 224, 226, 236, 238, 240, 242, 244, 246, 248, 250, 252, 254, 256, 258. Each of these statements is alleged to be false for the same general reason: subscriber numbers were allegedly "artificially inflated by ghost accounts," meaning they were "added to customer accounts without their knowledge, without that customer intentionally subscribing, or through the use of practices to deceive customers into not knowing that DTVN was a paid subscription product." App'x 743–53, ¶¶ 219, 221, 223, 225, 227, 237, 239, 241, 243, 245, 247, 249, 251, 253, 255, 257, 259. As the district court found, however, the PSAC fails to adequately allege that these statements were either misleading or false. Accurately reported data does not become an actionable misrepresentation merely because underlying misconduct may have contributed to the reported numbers. *See Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 98–99 (2d Cir. 2021) ("As a corollary of [the] rule [from *City of Pontiac*], accurately reported financial statements do not automatically become misleading by

6

virtue of the company's nondisclosure of suspected misconduct that may have contributed to the financial results."). That principle controls here: it was not misleading for AT&T to report its DTVN subscriber growth numbers simply because some degree of retail-level fraud or impropriety might be reflected in that data. Furthermore, the PSAC does not plead with sufficient particularity that the reported subscriber numbers are false. Echoing the confidential witnesses it cites, the PSAC alleges inconsistent and irreconcilable facts regarding the scale of alleged improper sales practices by AT&T sales representatives. *See, e.g.*, App'x 807, ¶ 422. It also leaves unspecified how many "ghost" accounts were created through this activity, *see* App'x 807–23, ¶¶ 422–73, and how many of those accounts were reflected in the publicly stated subscriber numbers.[2] *See* App'x 765, ¶ 294f. These vague allegations are insufficient to allege falsity, at least not to a level that would render the alleged misstatements material.

In sum, the district court properly denied leave to amend the complaint as to the Exchange Act claims because the PSAC does not adequately allege actionable misstatements. In light of this conclusion, we need not reach the issue of scienter.

## II. Securities Act claims

Plaintiffs also argue that the district court improperly found that the PSAC failed to state a claim under the Securities Act. As to these claims, Plaintiffs argue only that the PSAC alleged material misstatements or actionable omissions in the relevant filings.

---

[2] Regarding the second issue, the PSAC indicates that at least one unethical practice involved AT&T sales representatives creating a new DTVN subscriber and then immediately cancelling the account. App'x 765, ¶ 294f. However, these accounts would not have shown up in net subscriber numbers (because each new fraudulent subscriber would have a corresponding cancelation), and they would show up in subscriber totals only if that total was as of the moment between account creation and cancelation. The frequency of this practice, relative to other improper sales practices, is wholly unspecified in the PSAC.

"Section 11 of the Securities Act of 1933 imposes liability on an issuer of a registration statement in three circumstances: if (1) the statement contained an untrue statement of a material fact, (2) the statement omitted to state a material fact required to be stated therein, or (3) the omitted information was necessary to make the statements therein not misleading." *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 36 (2d Cir. 2017) (internal quotation marks omitted). Section 12 similarly applies to misstatements and omissions in prospectuses or oral communications, and Section 15 imposes liability on control persons or entities found to have violated Sections 11 or 12. *See Fridus v. Barclays Bank PLC*, 734 F.3d 132, 135 n.1 (2d Cir. 2013). Securities Act claims "do not require a showing of scienter, reliance, or loss causation." *Tongue v. Sanofi*, 816 F.3d 199, 209 (2d Cir. 2016). Instead, claims under Sections 11 and 12 typically turn on two issues, "(1) the existence of either a misstatement or an unlawful omission; and (2) materiality." *In re Morgan Stanley Information Fund Securities Litigation*, 592 F.3d 347, 360 (2d Cir. 2010). "The definition of materiality is the same for these provisions as it is under section 10(b) of the Exchange Act: whether the defendants' representations, taken together and in context, would have misled a reasonable investor." *Id.* (cleaned up).[3]

The parties agree that the Securities Act claims relate to statements in the January 5, 2017, Registration Statement, the January 9, 2017, Prospectus, and the Form 8-Ks filed on January 20 and 25. Plaintiffs argue: (1) that failing to warn investors about DTVN's risk violated SEC Item 503; and (2) that the above-listed documents contained materially misleading disclosures regarding DTVN subscriber growth and profitability. Neither argument is persuasive.

---

[3] "[T]he heightened pleading standard of Rule 9(b) applies to Section 11 and Section 12(a)(2) claims insofar as the claims are premised on allegations of fraud." *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004). The parties disagree on whether Rule 9(b) applies to these claims, but for the reasons discussed below, even under a Rule 8 pleading standard the claims fail.

First, Plaintiffs argue that the relevant disclosures violated Item 503 by failing to disclose that DTVN would fail or that it would fail to live up to expectations. At the relevant time, Item 503 required "a discussion of the most significant facts that make the offering speculative or risky" and instructed the issuer not to "present risks that could apply to any issuer or any offering." 17 C.F.R. §229.503(c) (as of January 2017, amended on April 2, 2019).[4] Plaintiffs' argument fails on the face of this rule: there is no plausible argument that a two-month-old product launched in a competitive field failing to live up to expectations is a risk unique to AT&T or that it was one of the "most significant risks" facing investors during the relevant time period.

Next, Plaintiffs argue that the relevant filings contained false or misleading statements regarding DTVN's profitability and subscriber growth. These alleged statements, however, are substantively identical to those that we rejected in the context of Plaintiffs' Exchange Act claims. App'x 877–82, ¶¶ 623–25, 636, 639, 641, 643. Accordingly, we find them neither false nor misleading for the same reasons.

We have considered Plaintiffs' remaining arguments and find them unpersuasive. Accordingly, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of the Court

---

[4] The SEC's FAST Act Modernization and Simplification of Regulation S-K was announced on April 2, 2019, and effective as to Item 503 on May 2, 2019. *See* 84 FR 12674-01, 2019 WL 1437180 (F.R.). That regulatory modification amended and relocated Item 503 to Item 105, *id.*, but we cite to the version of the rule effective during the relevant time period here.