**PACIFIC COAST FRUIT DISTRIB-
UTORS, Inc., a corporation,
Appellant,**

v.

**The PENNSYLVANIA RAILROAD
COMPANY, a corporation,
Appellee.**

**No. 13916.**

United States Court of Appeals
Ninth Circuit.

Dec. 8, 1954.

G. V. Weikert, Los Angeles, Cal., for appellant.

Frank M. Benedict, Benedict, Bowman & Stewart, Los Angeles, Cal., for appellee.

Before STEPHENS and FEE, Circuit Judges, and GOODMAN, District Judge.

GOODMAN, District Judge.

The question presented is whether the appellee railroad is entitled to collect freight transportation charges from one, who, as selling agent of a shipper and not a party to the original shipping document (i. e., bill-of-lading), is substituted as consignee and assumes control of a shipment by reconsigning it to other consignees and destinations.

The Court below said: Yes. We agree.

The agreed statement of facts shows that R. T. Fleischer & Company of Mexico delivered certain shipments of tomatoes to Southern Pacific Railroad Company of Mexico consigned to itself at Tucson, Arizona. Standard form Mexican bills-of-lading were executed. Appellee was a United States connecting carrier.

Appellant was a selling agent of Fleischer in the United States. After delivery of the tomatoes to Southern Pacific Railroad Company of Mexico, Fleischer diverted all the shipments to appellant as consignee. Appellant thereafter made successive diversions of the shipments to various designated consignees, in Kansas City, St. Louis, Chicago and Philadelphia. At final destination in New York, the tomatoes, being in poor condition, were abandoned to the U. S. Customs authorities for destruction, thus enabling Fleischer to obtain refund from the government of prepaid customs duties.

None of the freight charges on any of these shipments has ever been paid. The record does not show why appellee did not collect the freight charges from Fleischer through the originating Mexican carrier. At any rate, the freight charges were not paid and the appellee recovered judgment in the court below against the appellant.

The Mexican bill-of-lading provided: "that the shipment when accepted is subject to all conditions shown on the bill-of-lading of the participating carrier." Since, on its face, the Mexican bill-of-lading showed that the shipments were to be delivered in the United States, the parties thereto obviously had knowledge that participating carriers would be United States carriers. The Agreed Statement of Facts below shows that appellee and all other United States carriers, at the time, used a common standard form of bill-of-lading, approved by the Interstate Commerce Commission. Section 7 of this common or "Uniform Bill-of-Lading" makes the owner or consignor [1] or consignee liable for the payment of freight and all other lawful charges.[2]

Thus, even though no American bill of lading, as such, was issued by ap-

1. Under certain specified conditions, not here applicable, the consignor is not liable. Those conditions are that the consignor can only be relieved of liability if he stipulates at the time of shipment that the carrier shall *not* make delivery without requiring payment of the freight charges.

2. "The owner or consignee shall pay the freight and average, if any, and all other lawful charges accruing on said property; but, except in those instances where it may lawfully be authorized to do so, no carrier by railroad shall deliver or relinquish possession at destination of the property covered by this bill of lading until all tariff rates and charges thereon have been paid. The consignor shall be liable for the freight and all other lawful charges, except that if the consignor stipulates, by signature, in the space provided for that purpose on the face of this bill of lading that the carrier shall not make delivery without requiring payment of such charges and the carrier, contrary to such stipulation, shall make delivery without requiring such payment, the consignor (except as hereinafter provided) shall not be liable for such charges." Sec. 7 of Uniform Bill of Lading.

pellee as the American participating carrier, yet, by virtue of the provision of the Mexican bill-of-lading, quoted supra, the American Bill's provision bound the parties. Appellant, though not named as a party in the original bill-of-lading became such by amendment, as it were. For it was substituted in place of Fleischer as consignee and thereafter carried on as such. And appellee followed the instructions of appellant, acting as consignee, and not as agent of the shipper.

Therefore there is only to be considered whether appellant was, in fact, owner, consignor or consignee of the shipments so as to affix liability for payment of the freight charges.

■ There is no doubt that the mere designation of a party as consignee in a bill-of-lading, without more, is insufficient to entail liability for the payment of freight charges. Other attending circumstances or factors, such as receipt and acceptance of the shipment or exercise of control over future movements, are necessary to create liability for the payment of the charges. In this case, appellant not only was designated as consignee by the shipper, but, additionally and concurrently, acting in its status of consignee, it took over control and direction of the shipment and made successive reconsignments thereof. Thus it brought itself into the contract of affreightment and accepted and acquiesced in the status of both consignee and consignor. In either or both capacities, it became liable for the charges.

Appellant relies strongly on the case of Chesapeake & Ohio Railroad Co. v. Southern Coal, Coke and Mining Company, 254 Ill.App. 238. However, Chesapeake is clearly distinguishable. In the first place the action there was in assumpsit. Secondly, no bill-of-lading was issued, only so-called "mine cards" and "memo waybills." The documents did not undertake "to fix as a *matter of contract* whether the consignor or the consignee or his assignee should pay the freight." So in Chesapeake, liability was sought to be imposed under the common law doctrine of assumpsit. Here liability rests upon contract. Furthermore, we are unable to follow the reasoning in that case to the effect that only by actual acceptance and receipt of merchandise by the reconsignor does liability for payment of freight charges arise. We think that, under the circumstances of this case, the assertion by the appellant of unqualified and unequivocal dominion and control of the shipments, in successively diverting them, is equivalent to acceptance and actual receipt of the goods for the purpose of determining liability for freight charges.

■ Appellant claims that the District Court erred in allowing interest from the date the shipments were abandoned in New York. Appellant's specification of errors does not include this claim. We need not, therefore, consider the point. However, we have done so and reject the contention as unmeritorious.

The District Court was right. Its judgment is affirmed.