10-4934-cv(L)
Chem One, Ltd. v. M/V Rickmers Genoa

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 9th day of November, two thousand twelve.

PRESENT: REENA RAGGI,
PETER W. HALL,
DEBRA ANN LIVINGSTON,
*Circuit Judges.*

-----------------------------------------------------------------------

CHEM ONE, LTD., A.H.A. INTERNATIONAL CO., LTD., COMMERCIAL METALS COMPANY, GRAPHITE ELECTRODES SALES COMPANY, INC., HUNTER DOUGLAS METALS, INC., IKE TRADING CO., LTD., ITOCHU BUILDING PRODUCTS CO., INC., NATIONAL OILWELL L.P., TEXAS WYOMING DRILLING, INC., THE BABCOCK & WILCOX COMPANY, THE CRISPIN COMPANY, TORAY ENGINEERING CO., LTD., WESTCO SYSTEMS, INC., BLUELINX CORPORATION, BSTC GROUP INC., KURT ORBAN PARTNERS LLC, FOSTER WHEELER NORTH AMERICA CORP., GENERAL ELECTRIC COMPANY, SUEWON POONGRYUK MACHINERY CO., LTD., WEGO CHEMICAL & MINERAL CORP., WINTERSUN GROUP (USA) INC.,

*Plaintiffs-Appellants*,

v.

M/V RICKMERS GENOA, her engines, boilers, etc., SESCO GROUP, INC., CS MARINE CO. LTD, ESM (TIANJIN) CO., LTD, in personam, M/V "SUN CROSS", their engines, boilers, etc., JA SUNG MARINE CO., LTD., SUNWOO MERCHANT MARINE CO., LTD.,

    *Defendants*,

RICKMERS-LINIE GMBH & CIE. KG, RICKMERS GENOA SCHIFFAHRTSGES MBH & CIE. KG,

    *Defendants-Third-Party-Plaintiffs-Appellants*,

GENOA NAVIGATION CO. LTD,

    *Third-Party-Plaintiff-Appellant*,

ESM (TIANJIN) CO., LTD, ESM GROUP, INC.,

    *Defendants-Third Party Defendants-Cross Defendants-Cross Claimants-Counter Claimants-Appellees*,

ESM II, INC., ESM II LP, in personam, PUDONG TRANS USA INC., UNITED SHIPPING SERVICES, INC.,

    *Defendants-Third-Party-Defendants*.

------------------------------------------------------------------------

ATLANTIC COAST YACHT SALES, INCORPORATED,

    *Plaintiff*,

    v.

ESM GROUP, INC., ESM (TIANJIN) CO., LTD,

    *Defendants-Third Party Defendants-Cross Defendants-Cross Claimants-Counter Claimants-Appellees*,

    v.

Nos. 10-4934-cv(L);
   10-4938-cv(CON);
   10-4961-cv(CON);
   10-4965-cv(CON)

RICKMERS-LINIE GMBH & CIE. KG, RICKMERS GENOA SCHIFFAHRTSGES MBH & CIE. KG, GENOA NAVIGATION COMPANY LIMITED,

*Defendants-Cross Claimants-Cross Defendants-Counter Defendants-Third Party Plaintiffs-Appellants.*

-----------------------------------------------------------------------

ST. PAUL TRAVELERS, as subrogor of FOREIGN TIRE SALES, INC.,

*Plaintiff,*

RICKMERS GENOA SCHIFFAHRTSGES MBH & CIE. KG, RICKMERS-LINIE GMBH & CIE. KG, GENOA NAVIGATION COMPANY LIMITED,

*Third Party Plaintiffs-Cross Claimants-Cross Defendants-Counter Defendants-Appellants,*

GENOA NAVIGATION COMPANY LIMITED,

*Third Party Plaintiff-Counter Defendant-Cross Defendant-Appellant,*

v.

M/V RICKMERS GENOA, her engines, boilers, tackle, etc., ZEN CONTINENTAL COMPANY, INCORPORATED, CIE. K.G., SUNWOO MERCHANT MARINE CO., LTD., CS MARINE CO. LTD, JA SUNG MARINE CO., LTD., M/V "SUN CROSS", her engines, boilers, tackle, etc., in rem, PUDONG TRANS USA INC., SESCO GROUP, INC., UNITED SHIPPING SERVICES, INC., ESM II, INC., ESM II LP, in personam,

*Defendants,*

ESM (TIANJIN) CO., LTD.,

*Third Party Defendant-Cross Claimant-Counter Claimant-Counter Defendant-Appellee,*

ESM GROUP, INC.,

*Third Party Defendant-Cross Claimant-Counter Claimant-Appellee.*

-----------------------------------------------------------------------

APPEARING FOR APPELLANTS:     JAMES A. SAVILLE, JR. (Thomas E. Willoughby, *on the brief*), Hill Rivkins LLP, New York, New York, *for Appellants* Chem One, Ltd., A.H.A. International Co., Ltd., Commercial Metals Co., Graphite Electrodes Sales Co., Inc., Hunter Douglas Metals, Inc., Ike Trading Co., Ltd., Itochu Building Products Co., Inc., National OilWell L.P., Texas Wyoming Drilling, Inc., The Babcock & Wilcox Co., The Crispin Co., Toray Engineering Co., Ltd., Westco Systems, Inc., Bluelinx Corp., BSTC Group Inc., Kurt Orban Partners LLC, Foster Wheeler North America Corp., General Electric Co., Suewon Poongryuk Machinery Co., Ltd., Wego Chemical & Mineral Corp., Wintersun Group (USA) Inc.

EUGENE J. O'CONNOR (Timothy Semenoro, Robert E. O'Connor, *on the brief*), Chalos O'Connor, LLP, Port Washington, New York, *for Appellants* Rickmers Genoa Schiffahrtsges. mbH & Cie. KG, Rickmers-Linie GmbH & Cie. KG, Genoa Navigation Co. Ltd.

APPEARING FOR APPELLEES:     CHRISTOPHER H. DILLON (Michael J. Walsh, *on the brief*), Burke & Parsons, New York, New York.

Consolidated appeals from orders of the United States District Court for the Southern District of New York (Loretta A. Preska, *Chief Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the orders entered on March 31, 2009, and November 4, 2010, are AFFIRMED.

These consolidated interlocutory appeals challenge awards of summary judgment to appellees ESM Group, Inc. ("ESMG") and ESM (Tianjin) Co., Ltd. ("ESMT") (collectively, "ESM Parties"), on all claims asserted against them in consolidated maritime actions stemming from a March 8, 2005 explosion on the *M/V Rickmers Genoa*, which occurred approximately four hours after that vessel collided with the *M/V Sun Cross* in the Yellow Sea.[1] We review an award of summary judgment <u>de novo</u>, resolving all ambiguities and drawing all inferences in favor of the nonmovant, and we will affirm only if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. <u>See</u> <u>Nagle v. Marron</u>, 663 F.3d 100, 104–05 (2d Cir. 2011). While we assume the parties' familiarity with the facts and record of prior proceedings, a brief summary of certain facts is necessary to explain our decision to affirm the challenged orders.

The following facts are undisputed or accepted as true for summary judgment purposes. At the time of her collision with the *Sun Cross*, the *Rickmers Genoa* was carrying cargo from China to the United States, which included ESMT's shipment to ESMG of 600 tons of a magnesium-based desulphurization reagent known as Super-Sul Mg-89 ("SS-89"). The collision breached the *Rickmers Genoa*'s hull, causing seawater to flood the below-decks

---

[1] A motions panel of this court has already determined that we have interlocutory appellate jurisdiction over these appeals under 28 U.S.C. § 1292(a)(3) because "the District Court has determined conclusively all of the claims against the ESM Parties, and that decision is unaffected by any remaining claims." <u>Chem One, Ltd. v. M/V Rickmers Genoa</u>, 660 F.3d 626, 642 (2d Cir. 2011).

5

cargo hold in which the SS-89 was stowed. The seawater reacted with the magnesium in the SS-89, yielding flammable hydrogen gas. Four hours later, the accumulated hydrogen ignited, and the resulting explosion caused significant damage to the ship and cargo and killed a crew member.

The Rickmers Parties ("Rickmers"),[2] who owned and chartered the *Rickmers Genoa* for the voyage, now appeal from the award of summary judgment in favor of ESMT on their claims for (1) strict liability under § 4(6) of the Carriage of Goods by Sea Act ("COGSA"), see 46 U.S.C. § 30701 note; (2) negligent failure to warn under COGSA § 4(3); and (3) negligent misrepresentation under federal maritime common law. The Chem One Parties ("Chem One"),[3] who hold various interests in the cargoes lost and damaged in the explosion, appeal from the award of summary judgment on their parallel COGSA claims, and on their (4) federal maritime negligent-failure-to-warn claim against ESMG.

---

[2] The Rickmers Parties consist of Rickmers Genoa Schiffahrtsges. mbH & Cie. KG, Rickmers-Linie GmbH & Cie. KG, and Genoa Navigation Co. Ltd.

[3] The Chem One Parties consist of: Chem One, Ltd.; A.H.A. International Co., Ltd.; Commercial Metals Co.; Graphite Electrodes Sales Co., Inc.; Hunter Douglas Metals, Inc.; Ike Trading Co., Ltd.; Itochu Building Products Co., Inc.; National OilWell L.P.; Texas Wyoming Drilling, Inc.; The Babcock & Wilcox Co.; The Crispin Co.; Toray Engineering Co., Ltd.; Westco Systems, Inc.; Bluelinx Corp.; BSTC Group Inc.; Kurt Orban Partners LLC; Foster Wheeler North America Corp.; General Electric Co.; Suewon Poongryuk Machinery Co., Ltd.; Wego Chemical & Mineral Corp.; and Wintersun Group (USA) Inc.

1. COGSA Claims

Because Rickmers's and Chem One's challenges to the district court's ruling on their COGSA claims overlap, we consider—and reject—them together.[4]

a. Strict Liability

Under COGSA § 4(6), a shipper of "[g]oods of an inflammable, explosive, or dangerous nature to the shipment . . . shall be liable for all damages and expenses directly or indirectly arising out of or resulting from such shipment" if "the carrier, master or agent of the carrier, has not consented with knowledge of their nature and character." 46 U.S.C. § 30701 note § 4(6). Thus, COGSA § 4(6) precludes a carrier from "invok[ing] strict liability if it knows that a cargo poses a danger and requires gingerly handling or stowage, and nevertheless exposes the cargo to the general condition that triggers the known danger, regardless of whether the carrier is aware of the precise characteristics of the cargo." Contship Containerlines, Ltd. v. PPG Indus., Inc., 442 F.3d 74, 77 (2d Cir. 2006).

i. Knowledge

Here, the district court found, and the parties do not dispute, that ESMT gave the carrier, i.e., Rickmers, a U.S. Harmonized Tariff Schedule ("HTS") Code identifying its

---

[4] Because we conclude that Chem One's COGSA claims fail on the merits, we need not here decide whether such a third party, i.e., a party other than a carrier or agent of the carrier, can maintain a COGSA action against the shipper. See In re M/V DG Harmony, 533 F.3d 83, 93 (2d Cir. 2008) (recognizing that this court "has not yet determined whether third parties may bring claims under COGSA").

7

cargo of SS-89 as a magnesium-based substance, and that the Master of the *Rickmers Genoa* knew that magnesium emitted highly flammable hydrogen when exposed to water.

Both Chem One and Rickmers argue that the district court nevertheless erred in holding that the information conveyed by the HTS Code was sufficient to place Rickmers on notice of the dangerous properties of ESMT's cargo of SS-89. Chem One argues that Rickmers did not know of the danger posed by the SS-89 because ESMT never declared that the cargo was "dangerous" within the meaning of the International Maritime Dangerous Goods ("IMDG") Code, and never provided Rickmers with a Material Safety Data Sheet ("MSDS") identifying the SS-89 as dangerous. Indeed, Rickmers contends that it may invoke strict liability because ESMT affirmatively certified that the SS-89 was not a cargo to which the IMDG Code applied.

These arguments fail because strict liability under COGSA § 4(6) turns on what the carrier knows about the dangerous nature of its cargo, not whether or how the shipper conveys that information. See Senator Linie GmbH & Co. KG v. Sunway Line, Inc., 291 F.3d 145, 154 (2d Cir. 2002) (holding that plain meaning of § 4(6) indicates that "it is the carrier's knowledge of the goods' dangerous nature, not the shipper's, that conditions shipper liability"). Recognizing this principle, Chem One concedes that COGSA does not require a shipper to use any particular method, whether by MSDS or otherwise, to inform a carrier of the dangerous properties of its cargo. Moreover, neither Rickmers nor Chem One

8

identifies any case in which we have held that reference to an IMDG Code is necessary to place a carrier on notice of a particular cargo's dangerous nature.

Here, it is undisputed that ESMT informed Rickmers that the SS-89 was "[m]agnesium and articles thereof, including waste and scrap: Raspings, turnings and granules, graded according to size; powders." App. 1847. Further, the Master of the *Rickmers Genoa*, Captain Andrzej Bielawski, knew that magnesium reacted with seawater to produce hydrogen. Although Rickmers and Chem One speculate that Captain Bielawski could have obtained that knowledge after the collision, they adduced no evidence to support such an inference. In fact, the captain's unequivocal testimony that he knew that "magnesium, plus seawater, that means hydrogen," Bielawski Dep. 378:9, based on his "own background information," id. 379:10–11, indicates that the knowledge was longstanding. App. 1335–36.

Chem One and Rickmers dispute Rickmers's knowledge of SS-89's heightened dangers when exposed to seawater instead of distilled water, a circumstance resulting in the release of significantly more hydrogen. The argument is irrelevant for purposes of strict liability analysis.

A carrier need not know the "precise characteristics" of the cargo to have knowledge of its dangerous character sufficient to preclude strict liability. Contship Containerlines, Ltd. v. PPG Indus., Inc., 442 F.3d at 77. The question is whether the carrier was on "notice of any aspect of the cargo's dangerousness." In re M/V DG Harmony, 533 F.3d at 93. In Contship,

9

we held that a carrier's stowage of cargo near a heat source knowing that the cargo would become flammable if exposed to elevated temperatures sufficed to defeat its strict liability claim, see Contship Containerlines, Ltd. v. PPG Indus., Inc., 442 F.3d at 78, even if the carrier did not know the precise temperature at which the particular cargo would combust, see id. at 75–76. We observed that the question of a carrier's knowledge requires a "binary analysis, a party either will know that such a reaction is possible or it will not; the calibrated likelihood of an exothermic reaction under a variety of heat circumstances is not considered." Id. at 77; accord In re M/V DG Harmony, 533 F.3d at 93 (holding that relevant knowledge was carrier's knowledge that cargo "became vulnerable to combustion when heated"). Here, the undisputed facts establish that Rickmers was on notice that the SS-89 cargo contained magnesium and that flammable hydrogen would be released if it came in contact with water.

ii.     Exposure to Condition Triggering Known Danger

Rickmers argues that even such knowledge cannot defeat its strict liability claim because it did not intentionally expose the SS-89 to the condition triggering the danger, i.e., water. Such exposure was the result of an accidental collision with another vessel. The argument is without merit. Rickmers carried a shipment of a magnesium-based substance on a sea voyage knowing that a chemical reaction emitting flammable hydrogen would occur if the magnesium were exposed to any of the water in the vast ocean surrounding the ship. Despite this knowledge, the carrier stowed the SS-89 below deck in an enclosed cargo hold that would be susceptible to flooding in the event of a hull breach, and that would contain the

10

flammable hydrogen liberated from the magnesium by the reaction. As Rickmers concedes, the dangerous accumulation of hydrogen from the reaction of the water and magnesium could have been avoided entirely if it had stowed the SS-89 on deck where hydrogen could "dissipate[] harmlessly into the atmosphere." Rickmers Br. 52. Thus, there is no dispute of fact that Rickmers exposed the SS-89 to the condition triggering the danger by stowing it in a location that was susceptible to flooding in the event of a collision, and that would prevent the flammable gas created by the reaction from escaping the ship.

Accordingly, we conclude that Rickmers's and Chem One's COGSA § 4(6) strict liability claims fail as a matter of law based on the undisputed evidence that Rickmers knew that the SS-89 cargo would react with water to produce flammable hydrogen, and that Rickmers nevertheless stowed that cargo in a hold susceptible to flooding in the event of a collision from which resulting hydrogen could not escape.

b.    Negligent Failure To Warn

Rickmers argues that but for ESMT's failure to warn of SS-89's dangerous characteristics, Rickmers would have refused to carry the SS-89 cargo or would have stowed it on deck where hydrogen produced in any reaction with water would dissipate harmlessly into the atmosphere.

To prevail on such a COGSA § 4(3) claim, a carrier must prove that: "(1) the defendant had a duty to warn because the cargo presented dangers of which the stevedore and ship's master could not reasonably have been expected to be aware; (2) the defendant

11

breached that duty by failing to provide an adequate warning; and (3) the breach in duty caused (4) the resulting harm." In re M/V DG Harmony, 533 F.3d at 94 (internal quotation marks, ellipsis, and citation omitted). Establishing causation requires the carrier to show that the warning, if given, would have had an impact on the stowage decision. See id. at 96.

Rickmers failed to adduce evidence sufficient to raise a genuine factual dispute as to the effect a different warning would have had on its stowage decision. The only evidence that Rickmers would have refused the cargo is the deposition testimony of an employee in Rickmers's Dangerous Goods department who stated that he would have refused the SS-89 if he had been presented with an MSDS advising that a magnesium fire should be smothered with dry graphite, sand, or "Purple K," because Rickmers's ships were equipped only with water and carbon dioxide fire suppression systems. As the MSDS makes clear, however, its special instructions for fighting a magnesium fire were a consequence of the fact that water reacts with magnesium to "generate hydrogen gas that may cause an explosion," App. 619, a fact already known to the *Rickmers Genoa*'s Master. Thus, Rickmers cannot maintain that it would have declined the shipment of SS-89 if it had known that the magnesium-based product would react with water when Rickmers employees already knew that fact and accepted the cargo anyway.

Even assuming arguendo that ESMT had a duty to warn Rickmers about the higher rate at which SS-89 would evolve hydrogen when in contact with seawater, Rickmers has not adduced sufficient evidence to permit a rational factfinder to conclude that this additional

12

information would have prompted Rickmers to reject the SS-89 or to stow it in containers above the deck. First, Rickmers's fleet manager testified that stowage planners did not take account of potential flooding in making stowage decisions because it "should not happen." Sandmann Dep. at 107:22–25, App. 2175. Second, despite Rickmers's knowledge that ESMT's cargo was a magnesium-based substance that would evolve hydrogen if it came in contact with water, Rickmers chose to stow the SS-89 in a cargo hold, an enclosed space that would trap hydrogen resulting from the SS-89's contact with water. Third, Rickmers has adduced no evidence that would permit a factfinder to conclude that the speed with which the reaction would occur was a consideration that would have prompted a different stowage decision. Finally, although Rickmers's employees testified that it was Rickmers's general policy to stow IMDG cargoes on deck, and not in a cargo hold, Rickmers conceded in the district court that the SS-89 was not an IMDG cargo. Thus no evidence indicates that this policy would have applied to the SS-89, even if Rickmers had been given different warnings as to SS-89's dangerous characteristics.

Thus, we independently reach the same conclusion as the district court: that the COGSA § 4(3) claim fails for lack of evidence that Rickmers would have acted differently if ESMT had warned it of SS-89's reactivity with seawater.

13

## 2. Federal Maritime Common Law Claims

### a. Negligent Misrepresentation

Rickmers argues that ESMT is liable under federal maritime common law for misrepresenting the hazardous nature of the SS-89 by certifying in a November 2004 letter of indemnity that an earlier shipment of SS-89 was not a dangerous good listed in the IMDG Code. The district court deemed this argument abandoned because Rickmers failed sufficiently to distinguish it from its claim for breach of contract based on the bill of lading. Rickmers concedes in its appellate brief that it argued for the first time that it had pleaded a negligent misrepresentation claim in an October 20, 2010 letter to the district court which was filed only after briefing had been completed on the ESM Parties' motion "for summary judgment dismissing all the claims asserted in these consolidated cases against [the ESM Parties]," ESM Parties' Mot. for Summ. J. at 2, Chem One, Ltd. v. M/V Rickmers Genoa, No. 05-CV-04261 (LAP) (HBP) (S.D.N.Y. Apr. 16, 2010), ECF No. 152, and only after the district court had filed a draft of its order proposing to grant the motion for summary judgment on all claims asserted against the ESM Parties. Because Rickmers failed timely to assert this claim in opposition to summary disposition in the district court, we decline to address the claim for the first time on appeal. See Allianz Ins. Co. v. Lerner, 416 F.3d 109, 114 (2d Cir. 2005); Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1077 (2d Cir. 1993) (holding that party must raise all arguments against summary disposition in trial court and may not raise them for first time on appeal).

14

b.     Negligent Failure To Warn

Chem One argues that ESMG, the purchaser of the SS-89 shipped by ESMT, had a duty to warn Rickmers of the dangers posed by the SS-89 as a matter of federal maritime common law because of its extensive knowledge of the cargo's dangerous properties. In support, Chem One relies on language in Aslanidis v. U.S. Lines, Inc., which it interprets as leaving "open the possibility that a buyer may have a duty if it is in a unique position to protect against harm or to warn of known risks." Chem One Br. 40. To the contrary, Aslanidis defeats Chem One's claim. There, this court held that a purchaser "normally has no duty under the law to supervise the seller in the process of producing or packing the purchased goods." Aslanidis v. U.S. Lines, Inc., 7 F.3d at 1077 (internal quotation marks omitted). Aslanidis distinguished a case in which a purchaser had been found liable to a carrier for failure to warn it of the dangerous character of the cargo on the ground that the purchaser in that case "was the party actually responsible for the shipping and packaging of the container and was found liable for its own acts and omissions." Id. (emphasis in original). Here there is no dispute that ESMT arranged for the packing and shipment of the SS-89 carried by the *Rickmers Genoa*; ESMG was merely the intended recipient.[5] Thus,

---

[5] Although, Chem One appears to suggest that ESMG may be responsible for ESMT's failure to warn because ESMG allegedly dominated and controlled ESMT, Chem One does not argue that ESMT was ESMG's alter ego. Thus, we deem any such argument abandoned on appeal. See Norton v. Sam's Club, 145 F.3d 114, 117–18 (2d Cir. 1998).

15

Chem One's claim fails because ESMG had no duty at law to warn Rickmers of the cargo's latent dangers.

We have considered Rickmers's and Chem One's remaining arguments on appeal and conclude that they are without merit. Accordingly, the challenged orders granting summary judgment are AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court