RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0145p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

INGRAM BARGE COMPANY, LLC,

                *Plaintiff-Appellant*,

    *v.*

ZEN-NOH GRAIN CORPORATION,

                *Defendant-Appellee*.

> No. 20-5514

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:19-cv-01025—Aleta Arthur Trauger, District Judge.

Decided and Filed: June 28, 2021

Before: SILER, WHITE, and STRANCH, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:** David Reisman, Raymond T. Waid, Kathryn Z. Gonski, Trinity Morale, LISKOW & LEWIS, New Orleans, Louisiana, W. Brantley Phillips, Jr., BASS, BERRY & SIMS PLC, Nashville, Tennessee, for Appellant. Jason P. Waguespack, Fredric B. Eisenstat, GALLOWAY, JOHNSON, TOMPKINS, BURR & SMITH, New Orleans, Louisiana, Kenneth M. Bryant, BURR & FORMAN LLP, Nashville, Tennessee, for Appellee.

      SILER, J., delivered the opinion of the court in which STRANCH, J., joined. WHITE, J. (pp. 7–11), delivered a separate dissenting opinion.

─────────────────

## OPINION

─────────────────

      SILER, Circuit Judge. Typically, only parties to a contract are bound to its terms. This case is no exception. Zen-Noh Grain Corporation was neither a party to nor consented to Ingram

Barge Company's contract for the transportation of goods (a bill of lading) and thus is not bound to the contract's forum selection clause. Therefore, the district court did not have jurisdiction over Zen-Noh, and we AFFIRM the district court's dismissal for lack of personal jurisdiction.

I

Zen-Noh purchased shipments of grains from several companies. The sellers were required to prepay the barge freight and deliver the product to Zen-Noh's grain trading terminal in Convent, Louisiana. But the sellers were not required to use any specific company to deliver the goods. Plaintiff Ingram was chosen.

Ingram then issued a contract to the sellers for the transportation of goods—a negotiable bill of lading in industry parlance. A bill of lading defines the relationships of the parties: the consignor (company arranging shipment); the consignee (company which is owed delivery); and the carrier (company that carries the goods).[1] After the goods have arrived, a consignee presents the bill of lading to receive the goods. *See Evergreen Marine Corp. v. Six Consignments of Frozen Scallops*, 4 F.3d 90, 92 n.1 (1st Cir. 1993). A negotiable bill of lading is a document of title, which is "vested in the holder of the bill." *Id.* at 96.

All the bills issued by Ingram are essentially identical, except two. In most of these bills: "the grain seller (or affiliate) is the consignor; the consignment is to the order of the consignee; Zen-Noh is included as a 'notify' party 'A/C'[2] the consignor/consignee; the freight is described as prepaid; and the signature blocks are for Ingram and the consignor/consignee." In the two exceptions, Zen-Noh is not mentioned at all or is mentioned in the field for consignee.

Printed on each bill was an agreement to the "Carrier's Grain Transportation Terms" and a link to the Terms on Ingram's website. Importantly, the Terms: (1) purport to bind any entity that has an ownership interest in the goods; and (2) include a forum selection provision selecting the U.S. District Court for the Middle District of Tennessee.

---

[1]Parties can have multiple roles.

[2]"A/C" means "on account of."

Ingram updated its Terms in April 2019.  Ingram alleges that it notified Zen-Noh of the Terms through an email to CGB Enterprises, Inc.  In a declaration, a representative of Ingram says, "to the best of his knowledge, information and belief," that "CGB is a company closely connected with Zen-Noh and Zen-Noh is a part-owner of CGB."  The representative also says, again on information and belief, "CGB receives many of Zen-Noh's consigned grain cargos on the Lower Mississippi River and often acts on Zen-Noh's behalf in commercial dealings related to grain transportation."  Ingram's email to CGB was sent prior to the use of the invoices at issue in this case.

About three weeks later, Zen-Noh "sent an email to Ingram complaining that Zen-Noh had received invoices for which it did not believe it was liable."  Ingram responded that the invoices were "per [the] grain contract."  When Zen-Noh requested the grain contract for its review, Ingram replied with a link to the Grain Transportation terms.  Zen-Noh finally answered that it was "not party to the barge affreightment contract as received in your previous email, and as such, is not liable for nor will be paying these invoices."

No one complains that the grains were not shipped and received by Zen-Noh.  Instead, Ingram alleges it incurred costs that it claims Zen-Noh must pay.  Zen-Noh has already paid Ingram demurrage charges— "penalties related to delayed loading or unloading of goods"—but has not paid for "unrelated expenses that Ingram incurred en route involving 'fleeting,' 'wharfage,' and 'shifting.'"  Those costs it says it does not owe.  As a result, Ingram filed this lawsuit against Zen-Noh in the Middle District of Tennessee, but the district court dismissed the case for lack of personal jurisdiction.

II

We have jurisdiction over this appeal under 28 U.S.C. § 1291.  We review de novo the district court's dismissal for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).  *Air Products and Controls, Inc. v. Safetech Intern., Inc.*, 503 F.3d 544, 549 (6th Cir. 2007).  The plaintiff carries the burden of establishing the existence of personal jurisdiction, but that burden is relatively slight where, as here, the district court "relies solely on written submissions and affidavits" to resolve the issue.  *Id.*  Nonetheless, the plaintiff must meet its prima facia showing.

*Id*. The court must view the pleadings and affidavits in a light most favorable to the plaintiff and not weigh "the controverting assertions of the party seeking dismissal." *Id.* (quoting *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)).

## III

Ingram does not allege that Zen-Noh is subject to the court's jurisdiction through general or specific jurisdiction. Rather, it relies on a forum selection clause linked to its bills of lading. And a forum selection clause allows a party to agree "to the jurisdiction of a particular court." *Preferred Capital, Inc. v. Assocs. in Urology*, 453 F.3d 718, 721 (6th Cir. 2006) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972)).

But a bill of lading is a contract.[3] *See Wemhoener Pressen v. Ceres Marine Terminals Inc.,* 5 F.3d 734, 738 (4th Cir. 1993). "When a contract is a maritime one, and the dispute is not inherently local, federal law controls the contract interpretation." *Dynamic Worldwide Logistics, Inc. v. Exclusive Expressions, LLC*, 77 F. Supp. 3d 364, 373 (S.D.N.Y 2015) (quoting *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 22–23 (2004)). Under federal common law, these contracts should be construed "by their terms and consistent with the intent of the parties." *Id.* (quoting *Kirby*, 543 U.S. at 31). As such, these contracts bind the parties that negotiated them. *Wemhoener Pressen*, 5 F.3d at 738. Here, Ingram and the grain sellers.

Ingram instead attempts to bind Zen-Noh as a consignee, despite Zen-Noh's classification on most bills as a notify party. *See North Pennsylvania R. Co. v. Commercial Nat. Bank of Chicago*, 123 U.S. 727, 736–37 (1887) (recognizing that notify parties are distinct from consignees). Consignees are considered third-party beneficiaries to bills of lading. *Dynamic Worldwide Logistics*, 77 F. Supp 3d at 374. A bill can bind them, but only with their consent. *See Kawasaki Kisen Kaisha, Ltd. v. Plano Molding Co.*, 696 F.3d 647, 655 (7th Cir. 2012); *In re M/V Rickners Genoa Litig.,* 622 F. Supp. 2d 56, 71 (S.D.N.Y. 2009) *opinion adhered to on reconsideration*, 643 F. Supp. 2d 553 (S.D.N.Y. 2009) *and aff'd sub nom. Chem One, Ltd. V. M/V Rickmers Genoa*, 502 F. App'x 66 (2d Cir. 2012). And a third-party beneficiary can show

---

[3]Ingram cannot simply depend on its own broad contract terms to bind Zen-Noh. To do so simply begs the question. A party cannot "unilaterally employ definitions to bind another by provision to which the other has not consented to be bound." *United States v. Waterman S.S. Corp.*, 471 F.2d 186, 189 n.4 (5th Cir. 1973).

consent by: (1) filing suit; (2) its course of conduct; or (3) accepting through its agent.[4]  Zen-Noh did not consent in any of these ways.  So, even if we treat Zen-Noh as a consignee, the terms of the bills do not reach it.

*Lawsuit*.  Ingram sued Zen-Noh.  So, Zen-Noh neither "file[d] a lawsuit under the bill" nor "attempt[ed] to benefit from its terms."  *Kawasaki*, 696 F.3d at 655.

*Course of conduct*.  Zen-Noh did not acquiesce to Ingram's grain terms over a long period.  Just the opposite.  Shortly after Zen-Noh learned of the revised Terms, it informed Ingram that it did not consider itself bound by those terms negotiated by the sellers and Ingram. *Compare APL Co. Pte. Ltd. v. Kemira Water Solutions, Inc.*, 890 F. Supp. 2d 360, 367 (S.D.N.Y. 2012) (holding that "little past dealings" precludes a finding of acceptance through a course of conduct) *with Sea-Land Service, Inc. v. Landis*, No. Civ. A. 94-6153, 1996 WL 4120, at *3 (E.D. Pa. Jan. 3, 1996) (finding acceptance when there was no evidence a defendant rejected the bill's unchanged terms over a decade-long relationship).

Ingram highlights its longstanding relationship with CGB, claiming CGB is affiliated with and partially owned by Zen-Noh.  Yet, even if that is true, that relationship is too attenuated to presume Zen-Noh's acceptance.  Ingram also points to Zen-Noh's payment of demurrage charges on some of the shipments.  As the district court found, however, those payments may be explained by a separate obligation between Zen-Noh and the sellers.  Indeed, Zen-Noh may have "an implied obligation to pay freight charges separate and apart from the operative bill of lading." *APL Co. Pte. Ltd.*, 890 F.Supp. 2d at 367; *see also FT & T Consulting, Inc. v. B.O. Astra Management Corp.*, No. 12-cv-134, 2016 WL 8711085, at *5 (E.D.N.Y. Sept. 30, 2016).

*Acceptance by an agent*.  Zen-Noh and the grain sellers did not have an agency relationship. "A basic principle of agency law is that an agency relationship exists only if the agent is acting on behalf of and subject to the control of the principal." *APL Co. Pte. Ltd*, 890 F.

---

[4]Ingram makes much of Zen-Noh's status as the "ultimate consignee" or owner of the grain, but neither is synonymous with consent. *See Dynamic Worldwide Logistics*, 77 F. Supp. 3d at 374  ("The mere fact that a party is a consignee or third-party beneficiary is insufficient to warrant a finding that [the consignee] was bound by the terms contained in the bills of lading"); *APL Co. PTE v. UK Aerosols LTD.*, No. C 05-0646, 2006 WL 3848784, at *3 (N.D. Cal. Sept. 28, 2006) (finding mere ownership of property does not bind the purchaser to the terms of a bill of lading).

Supp. 2d at 369 (quoting *Maersk, Inc. v Neewra, Inc.*, 687 F. Supp. 2d 300, 329 (S.D.N.Y. 2009)).  Ingram presents no evidence that the grain sellers were "acting on behalf" of Zen-Noh or under Zen-Noh's control when the sellers entered the bills of lading.  *Id.* at 369 (collecting cases); *Kawasaki*, 696 F.3d at 655 ("the agency test must fail because [the consignee] did not have the power to control. . ."); *see also Baker v. LeBoeuf, Lamb, Leiby & Macrae*, 105 F.3d 1102, 1106 (6th Cir. 1997) (holding that counterparties cannot be bound to a third-party contract unless the entities are so closely related that being bound to the contract becomes foreseeable). To the contrary, binding Zen-Noh in this way would be "[in]consistent with the intent of the parties." *Kirby*, 543 U.S. at 31.  Zen-Noh paid for freight with the expectation that the seller would bear the full responsibility for transport.  In other words, Zen-Noh sought to avoid a contractual relationship with Ingram.

IV

While Zen-Noh is a beneficiary of these bills of lading, that "mere fact . . . does not create contractual obligations for that beneficiary." *Dynamic Worldwide*, 77 F. Supp. 3d at 374; *see also Affiliated FM Ins. Co. v. Kuehne + Nagel, Inc.*, 328 F. Supp. 3d 329, 338 (S.D.N.Y. 2018) (declining to enforce a forum selection clause against a third-party beneficiary).  Instead, Ingram must show Zen-Noh consented to its bills.  It has not.  Accordingly, we AFFIRM the district court's dismissal.

---

**DISSENT**

---

HELENE N. WHITE, Circuit Judge, dissenting.  I respectfully dissent.

The difference between negotiable and nonnegotiable bills of lading is important in this case.  "A negotiable bill of lading is a document of title, while a non-negotiable bill functions more like a receipt."  22 *Williston on Contracts* § 59:10 (4th ed. 2020). Buyers of highly fungible commodities like grain often choose to resell their grain while it is still in transit from the seller. *Wallingford Bros. v. Bush*, 255 F. 949, 950 (8th Cir. 1918).  To transfer title of the still-in-transit grain to a new buyer, the original buyer need only endorse the negotiable bill of lading and deliver it to the new buyer.  *Allied Chem. Int'l Corp. v. Companhia de Navegacao Lloyd Brasileiro*, 775 F.2d 476, 481 (2d Cir. 1985); Susan Beecher, *Can the Electronic Bill of Lading Go Paperless?*, 40 Int'l Law. 627, 631 (2006) ("the negotiable bill of lading [is] the only document which the shipper may not transmit by fax or email").  The new buyer then presents the bill to the carrier, who "is responsible for releasing the cargo only to the party who presents the original bill of lading. . . . If the carrier delivers the goods to one other than the authorized holder of the bill of lading, the carrier is liable for misdelivery."  *Allied Chem. Int'l Corp.*, 775 F.2d at 481.

A nonnegotiable bill works differently.  Goods sent by way of a nonnegotiable bill are "nontransferable; that is, John Doe cannot, by indorsing that bill to anyone else, give that transferee the right to receive the goods from the carrier."  Alan S. Gutterman, *Business Transactions Solutions* § 123:86 (2021).  Because title to the goods cannot be transferred mid-shipment when using a nonnegotiable bill, there is no requirement that the buyer present the original bill of lading at the time it accepts the goods from the carrier. *Pere Marquette Ry. Co. v. Chicago & E. I. Ry. Co.*, 255 F. 40, 41–42 (7th Cir. 1918); David A. Bury, *Electronic Bills of Lading: A Never-Ending Story?*, 41 Tul. Mar. L.J. 197, 209 (2016) ("negotiable bills of lading require consignees to present the physical bill of lading to enable the carrier to release the cargo; conversely, non-negotiable alternatives . . . are not burdened by this requirement").

For that reason, the name listed as consignee on a nonnegotiable bill of lading matters a great deal; the carrier must deliver to the named consignee or face liability for misdelivery. *Pere Marquette Ry. Co.*, 255 F. at 41–42. Not so with a negotiable bill. Since a negotiable bill of lading may change hands multiple times mid-shipment, "the consignee or 'notify party' designated on the [negotiable] bill of lading [may] not necessarily [be] the holder of the bill at the time and place of delivery," *Evergreen Marine Corp. v. Six Consignments of Frozen Scallops*, 4 F.3d 90, 92 n.1 (1st Cir. 1993), and these labels accordingly carry little significance. The holder of the negotiable bill is entitled to "the rights and [subject to the] liabilities of the original consignee." *United States v. Wells Fargo & Co.*, 271 F. 180, 182 (2d Cir. 1921). Thus, what matters when dealing with a negotiable bill of lading is who physically presents the bill and accepts delivery of the cargo under it. *Allied Chem. Int'l Corp.*, 775 F.2d at 481. And, because the bill of lading is negotiable, if it purports to bind the consignee to its terms upon acceptance of the goods under it, those who opt to become a party to the transaction by accepting the goods and presenting the bill are bound by its terms.

Ingram Barge's complaint alleges that Zen-Noh became the consignee after the bills of lading were issued, and Zen-Noh does not deny that it physically presented the negotiable bills of lading and accepted delivery of the cargo.[1] The district court and the majority cite the bills' identifying Zen-Noh as merely the "notify" party, and not the consignee, as evidence that Zen-Noh was not a party to the bills and did not consent to be bound by the bills' terms. I disagree with this analysis at a few points. First, Zen-Noh *is* the named consignee on Bill No. ING 19-00901. Second, even if Zen-Noh were listed as the notify party on that bill, as it is on all but one[2] of the other bills in this case, the bills of lading were negotiable, which means that any distinction between the "notify" party and the "consignee" evaporated when, as Ingram Barge alleges, Zen-Noh presented the negotiable bills and accepted delivery of the cargo under the bills. *See Pac. Coast Fruit Dist. v. Pennsylvania R.R. Co.*, 217 F.2d 273, 275 (9th Cir. 1954)

---

[1]Had Zen-Noh not presented the bills, Ingram Barge would be liable for misdelivery, and Zen-Noh makes no such claim.

[2]Bill No. ING19-00590 does not name Zen-Noh as either consignee or the notify party, but Zen-Noh does not dispute that it presented ING 19-00590 and accepted the cargo.

(party not named in original bill of lading became consignee through its actions).  It could not have demanded and accepted the cargo otherwise.  *See Allied Chem. Int'l Corp.*, 775 F.2d at 481.

True, neither Zen-Noh nor the named consignees bargained for the terms in Ingram Barge's bills of lading, but, as the majority acknowledges, a bill of lading "can nonetheless bind a non-party buyer where there is consent to be bound."  *Kawasaki Kisen Kaisha, Ltd. v. Plano Molding Co.*, 696 F.3d 647, 655 (7th Cir. 2012).  The bills of lading in this case clearly stated that "any Consignee hereto is (and will be deemed) bound by [Ingram Barge's] Grain Transportation Terms.  The surrender of this original Order Bill of Lading . . . properly endorsed is required before the delivery of the shipment."  *See, e.g.*, R. 1-38, PID. 201.  Although Zen-Noh told Ingram Barge on June 3, 2019—before accepting any of the cargo at issue here—that it did not believe it was liable for the fleeting, wharfage, and shifting charges Ingram Barge seeks to recoup, that shows only that Zen-Noh was on notice of the terms at issue and nevertheless decided to physically present the bills and accept the cargo under the bills anyway.  Absent an express agreement with Ingram Barge to the contrary, Zen-Noh's conduct in stepping into the shoes of the named consignee and accepting the grain pursuant to the negotiable bills of lading demonstrated consent to the terms of Ingram Barge's bills of lading.  *See, e.g.*, *Pac. Coast Fruit Dist.*, 217 F.2d at 275 (explaining that "receipt and acceptance of the shipment" would be sufficient to bind consignee to terms of a bill of lading that made the consignee liable for shipping charges, and holding that the consignee was bound to the terms of the bill of lading because the consignee's "unqualified and unequivocal dominion and control of the shipments" was "equivalent to acceptance" of the shipments); *Neilsen v. Jesup*, 30 F. 138, 139 (S.D.N.Y. 1887) ("The general rule undoubtedly is that the consignee and indorsee of the bill of lading who is owner of the goods and of the bill of lading, and who accepts the goods under the bill of lading, is bound by its terms."); *Gage v. Morse*, 94 Mass. (12 Allen) 410, 411 (Mass. 1866) ("The receipt by [consignee] of the cargo, which was to be delivered upon payment of the freight, would have been evidence of an agreement to receive it upon the terms named in the bill of lading[.]").  The majority cites no case holding that a party can unilaterally change the terms of a bill of lading under which it demands and accepts delivery of the cargo.

The majority contends that neither Zen-Noh's status as the "ultimate consignee" nor as owner of the grain constitutes consent to the bills' terms, and that being a mere beneficiary of the bills of lading does not create contractual obligations for Zen-Noh. Each of those propositions standing alone may be correct, but none is squarely applicable here where Zen-Noh was a consignee, owner and beneficiary *who also* presented the bills and accepted the goods. Indeed, in none of the cases cited by the majority did a consignee physically present a negotiable bill of lading and accept the goods.[3] That factual distinction is critical.

Moreover, presentation of the bills and acceptance of the goods is not the only evidence of consent to be bound that can be found in the record. Zen-Noh paid demurrage charges owed under the terms of Ingram Barge's bills of lading for some of the shipments at issue. Ingram Barge argues that partial payment of demurrage charges pursuant to the bills of lading is evidence of Zen-Noh's consent to be bound. The majority echoes the district court's speculation—based on no fact apparent in the record—that those payments "may be explained by a separate obligation between Zen-Noh and the sellers" or were paid pursuant to an implied obligation to pay freight charges. One of those theories may prove to be correct, but dismissing Ingram Barge's partial-performance argument based on speculation contravenes our admonition that "the pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and the district court should not weigh 'the controverting assertions of the party seeking dismissal'" when it elects to rule on a Rule 12(b)(2) motion without a hearing or the opportunity for discovery. *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (quoting *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)). At this stage, the

---

[3]In *Dynamic Worldwide Logistics, Inc.*, the consignee failed to present the negotiable bill of lading at the time it accepted the goods, thus never evincing knowledge of the bill of lading's terms. 77 F. Supp. 3d at 368. *Affiliated FM Ins. Co. v. Kuehne + Nagel, Inc.* is inapposite, since the third-party beneficiaries were not consignees or owners of the cargo, but subcontractors of the carrier who sought the liability protections of the bill's Himalaya Clause. 328 F. Supp. 3d 329, 338 (S.D.N.Y. 2018). And in the remainder of the cases cited by the majority, the goods were never accepted by the consignee. *Kawasaki Kisen Kaisha, Ltd.*, 696 F.3d at 652 (goods damaged in train derailment); *APL Co. PTE. v. UK Aerosols LTD.*, No. C 05-0646-MHP, 2006 WL 3848784, at *1 (N.D. Cal. Sept. 28, 2006) (goods were "leaking, dangerous and hazardous" and were destroyed by carrier); *APL Co. Pte. v. Kemira Water Sols., Inc.*, 890 F. Supp. 2d 360, 364, 368 (S.D.N.Y. 2012) (hazardous goods—shipped by nonnegotiable bill of lading with terms the consignee never received—leaked during shipment and were rejected by consignee); *In re M/V Rickmers Genoa Litig.*, 622 F. Supp. 2d 56, 62 (S.D.N.Y.), *opinion adhered to on reconsideration*, 643 F. Supp. 2d 553 (S.D.N.Y. 2009), *and aff'd sub nom. Chem One, Ltd. v. M/V Rickmers Genoa*, 502 F. App'x 66 (2d Cir. 2012) (goods were destroyed by an explosion en route).

district court should have considered Zen-Noh's partial payment of demurrage charges as evidence of Zen-Noh's consent to be bound.

Lastly, I do not disagree with my colleagues' observation that Zen-Noh likely sought to avoid any contractual relationship with the carrier by prepaying the shipping fees to the seller. But Zen-Noh was free to resell the grain or reject the shipment if it did not agree to Ingram Barge's terms. Further, the seller opted to choose Ingram Barge to transport the goods and could have bargained for different terms with Ingram Barge that would not have required the consignee to pay the extra shipping fees. If Zen-Noh believes the terms of Ingram Barge's bills of lading were inconsistent with its separate agreement with the seller, Zen-Noh's recourse is against the seller for violating the terms of that separate agreement. Zen-Noh's understanding of its agreement with the seller has no bearing on the issue before us. Our task here is to determine whether Ingram Barge carried its "relatively slight" burden in making out a prima facie case for personal jurisdiction over Zen-Noh. *Id.* (quoting *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988)). I would hold that it has cleared that low hurdle.